THE PEOPLE *ex rel.* Attorney· General

*v.*

FRANK S. MURPHY.

*Filed at Springfield March 27, 1886.*

| 119 | 159 |
| 124 | 296 |
| 119 | 159 |
| 34a | 198 |
| 119 | 159 |
| 35a | 410 |
| 119 | 159 |
| 160 | 474 |
| 119 | 159 |
| 200 | 4346 |

1.  ATTORNEY AT LAW—*malconduct, such as to justify the striking of the name of an attorney from the roll.* A promissory note for $300, with a credit indorsed thereon for $200, was placed in the hands of an attorney at law for collection. The attorney procured a judgment upon the note, in the name of his client, before a police magistrate, for $135.08. After having collected on this judgment over $100, the attorney withdrew the note from the magistrate's hands, and, procuring an assignment of the note to himself from the payee, his client, the attorney instituted a second suit upon the same note, in his own name, before another justice. There were several makers of the note, but there was no attempt to bring any of them into court to answer to this second suit, except one, and upon him service was had while he was in a state of extreme drunkenness, and this fact was known to the attorney in whose name the suit was brought. There being no appearance, judgment was taken by default against the party served in the manner mentioned, for $183.68, when there was due under the first judgment less than $40. Execution issued upon the second judgment having been returned *nulla bona*, a transcript was filed in the office of the clerk of the circuit court, upon which execution was issued, which was levied upon a town lot owned by the defendant in the execution. The lot was sold, and the attorney-plaintiff became the purchaser. Of these proceedings the owner had no notice. Afterwards, the attorney sold and conveyed the lot to innocent parties, for $1250: *Held*, that this was such malconduct on the part of the attorney as authorized this court to strike his name from the roll of attorneys.

2.  SAME—*failure to pay over money collected—ground of disbarring.* An attorney at law collected money belonging to his client, under an agreement for a certain fee in full, which he failed to pay over on demand by the administrator of his client, and tender of his fee, the attorney falsely claiming that his client had agreed to pay him what his services might be reasonably worth. The attorney obtained the payment of the debt to himself under false pretences, and by placing upon the record of the court a paper purporting to be an assignment of the decree to him, the whole circumstances showing bad faith on his part: *Held*, sufficient misconduct to require the striking of his name from the roll of attorneys.

3.  SAME—*contract between attorney and client, construed—fee depending upon the result of the suit.* A contract between an attorney and his client stated that the former "agrees to give his services as an attorney in the case of" his client "against C and D, foreclosure, now pending in * * * for

$150, if he wins or succeeds in obtaining a foreclosure of said mortgage, and is not to charge anything for his services unless he does succeed in the premises:" *Held*, that the attorney thereby bound himself to obtain a valid decree of foreclosure for the fee named, and that his undertaking was not discharged by obtaining a decree which was afterwards reversed on appeal or error.

4.   CONSTRUCTION OF CONTRACT—*as given by the parties.* It is a familiar rule of construction, that when the terms of an agreement are in any respect doubtful or uncertain, and the parties to it have, by their own conduct, placed a construction upon it which is reasonable, such construction will be adopted by the courts in the event of litigation concerning it.

This was an information or complaint filed by the Attorney General, in this court, against Frank S. Murphy, an attorney at law of this State, seeking to have his name stricken from the roll of attorneys. The material facts of the case are fully stated in the opinion of the court.

Mr. GEORGE HUNT, Attorney General, for the People.

Mr. FRED. A. WILLOUGHBY, and Mr. F. F. COOKE, for the defendant.

Mr. JUSTICE MULKEY delivered the opinion of the Court:

On the 5th day of January, 1884, the Attorney General filed, in this court, an information against Frank S. Murphy, of Galesburg, charging him with "malconduct" as an attorney and counselor at law, upon the filing of which a rule was entered against him to show cause why his name should not be stricken from the roll of attorneys. The information, as originally filed, contained four counts, but subsequently a *nolle prosequi* was entered as to one, so there are now but three counts upon which issues of fact have been formed.

Waiving all unnecessary verbiage, the information, as it now stands, charges in substance—

*First*—That the defendant, on a certain day mentioned, entered into a contract with one Margaret Rafferty, now deceased, to foreclose and collect the amount due on a certain mortgage, for a fee of $150; that after the foreclosure of the

mortgage, to-wit, on the 13th of March, 1880, he collected thereon $330, (amount of decree,) which, after demand made and tender of said fee, he refused to pay over to her administrators.

*Second*—That the defendant, while sustaining the relation of attorney to the relator, Matthias Loos, procured his intoxication, and while in that condition, caused him to be served with process to answer a demand in favor of said Murphy, which had already been settled, and, by reason of said Loos' intoxication, obtained a judgment, by default, against him, under which he (the defendant) caused to be sold a certain lot belonging to the said Loos, and obtained a sheriff's deed therefor.

*Third*—That while defending one J. Austin, in the Knox circuit court, on a charge of rape, the defendant induced said Austin to make an affidavit for a continuance on account of the absence of one Nelson West, a witness in said cause, alleging that said witness was not absent by the consent of the affiant, when, in truth and in fact, the said Murphy well knew said witness was absent by the consent of the said Austin, and of himself, also.

With respect to the third charge, the evidence is conflicting, and we are of opinion it is not sustained by the weight of the testimony. It is therefore unnecessary to take further notice of this branch of the case.

The facts upon which the second charge is based, are as follows: On the 16th of January, 1871, Matthias Loos and others executed a note for $300, payable to Jerry Sullivan, one year after date, with ten per cent interest. On the 1st of March, 1872, a credit of $200 was indorsed on the note. With this indorsement upon it, it was placed in the defendant's hands for collection, who, as attorney for Sullivan, on the 6th day of July, 1872, before M. D. Cook, a police magistrate, recovered a judgment on said note, against John Loos, one of the makers, for $135.08. On the 15th of the same

11—119 ILL.

month, Matthias Loos was made a party to this judgment,
by *scire facias*. Within a short time afterwards, there was
paid on this judgment, altogether, $100, leaving only a small
balance of about $30 due upon it. During this entire trans-
action, Murphy was acting as attorney for Sullivan, the plain-
tiff in the suit. Notwithstanding the merger of the note in
the judgment, so far as Matthias Loos was concerned, and
notwithstanding the small balance due upon the judgment,
the defendant, some time in September, 1875, called on the
justice, and withdrew the note from the papers in the case,
giving to the justice his own receipt therefor, and afterwards
took an assignment of it from Sullivan to himself. On the
29th of November following, he recovered, in his own name, a
second judgment against Matthias Loos, upon the same note,
the latter judgment being for $183.68, when the balance due
on the former judgment, including interest and costs, was
less than $40. While this last suit was commenced against
the other two makers of the note, as well as Matthias Loos,
it is a significant fact there was no service had on either of
the other parties, nor were any steps taken to make them
parties to the judgment. An execution having been issued
on this judgment, and returned *nulla bona*, a transcript of the
proceedings was filed in the office of the clerk of the circuit
court, whereupon an *alias* execution was sued out on the
judgment, under which a valuable town lot belonging to Loos
was sold by the sheriff, and bid off by Murphy, who subse-
quently received a sheriff's deed therefor. Matthias Loos hav-
ing been beastly drunk at the time the last summons issued
by the justice was served upon him, did not appear, and the
judgment was entered against him by default. Nor did he
know, as he testifies, anything about what had been going on,
until after the defendant had sold the lot in question. On the
13th of February, 1879, the defendant sold the lot to Flinn
& Merrick for $1250, they having no notice of Loos' equities.
The evidence, however, fails to show that Murphy procured

the intoxication of Loos at the time he was last served with process. But there was no occasion to do this, for he was then, and had been for several days past, drinking to excess, and, from all the circumstances, the defendant must have known he was then in a drunken condition.

The material facts above stated, about which there is no room for dispute, speak for themselves, and we leave them without a word of comment.

The facts relating to the other charge are as follows : In the summer or fall of 1873, Michael Rafferty, as the agent of his mother, Margaret Rafferty, who was a resident of Iowa, employed the defendant to foreclose a mortgage, which she held against John Slattery. The suit was commenced without any understanding as to the amount of the fee. In the spring of 1874, Mrs. Rafferty, being then temporarily in this State, called on the defendant for the purpose of fixing the amount of his fee. This being done, she requested the terms of the agreement to be put in writing. The defendant thereupon prepared, and the parties signed, the following :

"GALESBURG, *March 20, 1874.*

"*Memorandum of agreement between F. S. Murphy and Margaret Rafferty:*

"Murphy agrees to give his services as an attorney in the case of Margaret Rafferty against Ed. Slattery and E. Erickson, foreclosure suit, now pending in the circuit court of Knox county, Ill., for $150, if he wins or succeeds in obtaining a foreclosure of said mortgage, and is not to charge anything for his services unless he does succeed in the premises. Mrs. Rafferty agrees to pay him that amount as of the date of commencing suit, if he succeeds.

F. S. MURPHY,

MARGARET RAFFERTY."

Under this agreement, as is shown by a decided preponderance of the evidence, the pending suit was prosecuted to a final determination. The case was tried twice in the circuit

court, and the decrees, in both instances, were, on the appeal
of the defendants, reversed by this court. On the cause being
remanded the second time, a decree was entered in Mrs. Raf-
ferty's favor for $330, in accordance with a stipulation filed
in the cause. This decree was paid by the attorneys of Slat-
tery to the defendant, and no part of it has ever been paid
over to Mrs. Rafferty or her legal representatives. It is true,
the defendant claims that he has paid out a part of it on ac-
count of costs in the litigation, and the vouchers filed by him
show that he has paid out, on that account, $90.35. On the
other hand, the evidence shows Mrs. Rafferty paid him, pend-
ing the litigation, $164. No importance, however, is attached
to the state of the account between the parties, in respect to
the amounts advanced by her, on the one hand, and the costs
paid by him, on the other, for it is clear, beyond all contro-
versy, that after allowing him his fee of $150, and the full
amount of his claim on account of costs, there is still a bal-
ance in his hands due the estate, and his chief defence in the
present proceeding is a tacit admisssion of this fact.

The defence is of a two-fold character: It is claimed, in
the first place, that the defendant fully performed the agree-
ment on his part when he obtained the first decree, and that,
consequently, all his subsequent services were *extra*, and for
which he should be allowed reasonable compensation. Fail-
ing to sustain this position, the defendant then contends,
that after the reversal of the first decree in the case, he had
a new understanding with Mrs. Rafferty, by which he was to
be paid a reasonable compensation for his services. As to
the first point, the utmost that can be reasonably claimed is,
that the agreement between the parties, judged by what ap-
pears upon its face, merely, is equivocal in the respect men-
tioned; but when considered in the light of established facts,
the construction contended for by him is wholly inadmissible.
If, as sworn to by the defendant himself, the total amount of
the mortgage was only between $400 or $500; that at the

time no defence was apprehended, and that according to his understanding he simply undertook to obtain a decree in the circuit court, and not to collect the money, upon what principle can the fee charged be sustained? The fee, upon the hypothesis stated, would be simply unconscionable, and such a one as no lawyer having an ordinary sense of justice would think of charging. By the terms of the instrument it will be perceived the defendant "agrees to give his services as an attorney *in the case* * * * for $150, if he succeeds in obtaining a foreclosure" of the mortgage, "*and is not to charge anything for his services unless he does succeed in the premises.*" By the use of these terms, he bound himself not merely to obtain a decree, but to obtain a *foreclosure*,—that is, a valid foreclosure,—one not based upon an erroneous decree, reversible on appeal or writ of error. That this was the understanding of both parties, and particularly of the defendant, is fully shown by his subsequent conduct. To say that he did not so understand the agreement, would be to convict him of the grossest fraud.

Unfortunately for the defendant, Michael Rafferty, through whom the defendant was first employed, and Patrick Collopy, an acquaintance of the parties, were both present when the subject of the fee was discussed and finally settled, as heretofore stated. Rafferty, in speaking of the matter, says: "It is not true, as Murphy states in his plea, that the $150 named in the written contract was for his pay for the first trial, only. He was to fight it through for that $150, and if he did not gain it he was to have nothing. Murphy said he would not expect his pay until he got it out of the mortgage, and he would take it out of money collected of John Slattery." Collopy, in giving his account of the affair, says: "When the agreement for fees, between Murphy and Mrs. Rafferty, was made, I went up with the old lady to Murphy's office, and Murphy told the old lady he would foreclose the mortgage for $150, and if *he didn't win the case* it would cost her

nothing." Upon these conditions he advised her to accept the defendant's proposition, and she thereupon did so. The agreement, as he states, was then prepared by Murphy, and signed by the parties. That Murphy himself so understood the agreement, is shown by the further fact, as testified to by Patrick Collopy and Michael and Kate Rafferty, that after the case had turned out more troublesome than he had perhaps expected, he, by himself and through others, appealed to Mrs. Rafferty to increase his compensation, saying, he had undertaken the case for too small a sum, or words to that effect. Michael Rafferty and Collopy both testify, that at his request they called on Mrs. Rafferty, to see if they could induce her to allow him some additional compensation, and that she promptly refused to do so,—thus clearly showing that both of the parties to the agreement put the same construction upon it.

It is a familiar rule of construction, that where the terms of an agreement are in any respect doubtful or uncertain, and the parties to it have, by their own conduct, placed a construction upon it which is reasonable, such construction will be adopted by the courts, in the event of litigation concerning it. So far as the terms of the agreement in this case may be regarded as in any degree doubtful, this principle of construction by the parties themselves applies with peculiar force. It is true, the defendant denies that he requested Michael Rafferty and Patrick Collopy, respectively, to see if they could not get the old woman to increase his compensation, as sworn to by them. It is also true, that he denies making a direct appeal himself to Mrs. Rafferty for the same purpose, as sworn to by Mrs. Kate Rafferty; nevertheless, his main defence is based, as we have already seen, upon the claim that he had just such an agreement with her. Outside of the testimony of the defendant himself, there is not a fact or circumstance in the whole case that sustains this claim. The proof is positive, as we have just seen, that Mrs. Rafferty

was spoken to on two different occasions, by two different persons, and finally by the defendant himself, for the purpose of getting her to agree to a change of the contract, or, in other words, to increase his compensation, and that in each instance she positively refused to do so.   The last effort to accomplish this object, which was made by himself, was just as she was starting from this State the last time, and there is no claim that he ever saw her afterwards.   The account which the defendant gives of this alleged new understanding in respect to fees, is as follows:  "I told her, (Mrs. Rafferty) in substance, she must not expect me to carry this case through all the courts on the conditional fee.   She said, for me to go on and it would be all right, or words to that effect,—that I should be paid reasonable fees.   That is the way I understood it." It is worthy of remark that this reply of Mrs. Rafferty, "to go on and it would be all right," is not at all such a one as she would probably have made.   The evidence tends to show that she was close, and quite particular in money matters. This is well illustrated by her requiring the original contract between her and the defendant to be reduced to writing.   Assuming the defendant made the statement to her he claims he did, and that she concluded to entertain his proposition at all, which is very unlikely, as is shown by the testimony already alluded to, she would almost certainly have wanted to know what the additional expense would be, and to have had some distinct understanding about it.   But it is still more difficult to understand the defendant's own conduct in the matter.   Assuming that he obtained from her a new agreement to pay him what his services were reasonably worth, in view of the fact the old agreement was still in her possession, common prudence on his part would have required the new one to be put in writing, or at least the old one to be surrendered and cancelled.   But nothing of this kind was done.   The truth is, the whole story, in the light of admitted facts, is highly improbable.   Moreover, the testimony of Col-

lopy, who should have been present at the time, is wholly inconsistent with this claim of the defendant. Additional reasons will presently appear, when we come to speak of another feature of the case, why this claim of the defendant can have no foundation in fact.

After obtaining the decree for $330, as heretofore stated, the legal representatives of Mrs. Rafferty gave John Slattery, defendant in the decree, notice not to pay the same to Murphy. Slattery thereupon notified Messrs. Williams, McKenzie & Calkins, his solicitors, of this fact. Murphy, on being informed by Mr. Calkins of the service of this notice, told Calkins that he had an assignment of record of the decree, from Mrs. Rafferty. This, upon an examination of the record, appearing to be true, Slattery's solicitors paid to Murphy the full amount of the decree, as heretofore stated. The assignment in question, and upon which the balance of the decree was paid to Murphy, was attached to the records of the circuit court, and when so attached, and at the time the money was so paid upon the faith of it, purported to be the original instrument, and it was so regarded at the time by Slattery's solicitors in making the payment. But the instrument, as it now appears, has the word "Copy," written at the top of it, in the handwriting of Murphy. That this word was written there after the instrument was attached to the record, is proven beyond a reasonable doubt, and that it is in the handwriting of Murphy, is admitted by Murphy himself. His claim now is, that the word "copy" was there when the instrument was attached to the record, but in this claim he is absolutely overwhelmed by the testimony of other witnesses. The instrument was seen and carefully examined by three skillful attorneys before the word "copy" was written upon it, one of whom made out a literal copy of every word, figure and mark upon it, and by the assistance of one of the others the copy was carefully compared with the original, and found correct, and the copy thus prepared is now before us, and the word

"copy" nowhere appears upon it. All three of these attorneys swear the word "copy" was not on the instrument when it was first attached to the record. Besides this, the idea that an intelligent, careful attorney, who would decline to pay money to another without an exhibition of his authority to receive it, would pay it out upon a mere copy of the instrument purporting to confer such authority, is simply absurd. And it is just about as difficult to believe that one of the defendant's intelligence and experience as a lawyer would offer such a copy for such a purpose. The copy of this alleged assignment is entitled in the foreclosure suit, and bears date June, 1875. It assigns to the defendant "the decree and claim," to secure him "against cost, and also as security *for his reasonable attorney fees in said cause.*" From the evidence before us, we can not repress the conviction that the so-called assignment has never had other than an ideal existence, and that the instrument now purporting to be a copy of it is a pure fabrication of the defendant. If the defendant, in June, 1875, obtained this assignment as a security "for his reasonable attorney fees," why does he, in the fall of 1876,—something over a year afterwards,—tell Mrs. Rafferty, as he swears he did, she must not expect him to go on under the conditional fee first agreed on? Why does he, in his testimony, even now rely on her alleged reply to that statement of his, "Go on and attend to the case, and it will be all right," to prove there was a change in the original agreement? If the assignment be genuine, it establishes Mrs. Rafferty's liability to pay reasonable attorney fees beyond all question, and there was not the slightest occasion for afterwards importuning her upon the subject, as he himself admits he did. But this is not all. It appears from one of the defendant's own letters, which he admits to be genuine, that on October 28, 1878, he wrote to Mrs. Rafferty, asking her to assign to him one-half of the decree. If he already had an assignment of the whole of the decree, why did he want an assignment of half of it?

It could have been of no earthly advantage to him. When asked to explain, he is unable to do so,—doesn't remember anything about it. When asked to produce the original assignment, he can't find it,—doesn't think he has it,—thinks it was probably thrown by him into the waste basket.

With these facts before us, can we say that the defendant has not, in the language of the statute, been proven guilty "of malconduct in his office" as an attorney of this court? Clearly we can not. We regret to say, that after a most careful consideration of the facts, we find nothing to palliate, much less justify, the conduct of the defendant. An order will therefore be entered in this court striking the name of the defendant, Frank S. Murphy, from the roll of attorneys, and disbarring him henceforth from practicing law in any of the courts of this State.    *Rule made absolute.*

Mr. JUSTICE SHOPE was not present at the consideration of this cause, and took no part in its determination.

Mr. CHIEF JUSTICE SCOTT: I do not concur.

Mr. JUSTICE CRAIG not being present when the case was discussed, took no part.