### James O'Connor v. B. F. Harrison.

#### Gen. No. 4,749.

1. LEASE—*right to withdraw option.* A person who has given, without consideration, an option to make a lease, may withdraw such option at any time before it is acted upon.

2. LEASE—*effect of accepted option.* Where an option for a lease is given, even though there be no consideration for the option, if it is acted upon by the party receiving the option, a contract is created.

3. SPECIFIC PERFORMANCE—*when awarded of option for lease.* Where an option for a lease is given, even without consideration, and is accepted, specific performance will be awarded where it appears that the party accepting the option has acted upon the good faith of the contract so created, and would be irreparably injured if specific performance were not awarded.

4. CONTRACTS—*canon of construction.* Courts will adopt such a construction of a contract as the parties by their conduct have placed upon it, when such construction is reasonable.

O'Connor v. Harrison.

Bill for specific performance. Appeal from the Circuit Court of Knox county; the Hon. GEORGE W. THOMPSON, Judge, presiding. Heard in this court at the October term, 1906. Affirmed. Opinion filed March 13, 1907.

R. D. ROBINSON, for appellant.

EDWARD J. KING, for appellee.

MR. PRESIDING JUSTICE DIBELL delivered the opinion of the court.

Appellee filed a bill against appellant in the court below for the specific performance by appellant of an option contract to lease appellee a certain lot in Galesburg, setting out the option contract and averring appellee's acceptance thereof within the period of its limitation and before any withdrawal thereof by appellant, and the refusal of appellant to perform. Appellant answered denying that the option was accepted by appellee within the period of its limitation, and averring that the option was withdrawn before any acceptance. There was a reference to the master and a report by him in favor of appellee, and a decree of specific performance, from which defendant below appeals.

The option was dated July 25, 1905, at Galesburg, Illinois, and the body of it was as follows: "I hereby give B. F. Harrison option for thirty days after date, to lease my lot on corner of Cherry and Simmons Sts., at $600 per year, for five years, with the privilege of ten years." At the date of that option appellee was in possession of the premises therein described under a lease from appellant to appellee and one Deland, whom appellee had afterwards bought out. That lease ran to April 1, 1906, and the lot was vacant when it was entered into. After the term of that lease began and before this option was given, appellee erected on the premises a frame building, brick veneered, at a cost of $4,200. It was so built that it could readily be removed, and the contractor who built it testified

that he considered it a temporary and not a perma-
nent building. Appellee testified that it was thor-
oughly understood between appellant and himself that
he was to remove the building at the end of that lease,
and that that provision was left out of that lease
through some oversight, and that he did not discover
that omission till after he obtained the option above
specified, and that it was his opinion or belief that
appellant did not discover that omission till the trial
of this case, from the fact that appellant told him
(apparently after his refusal to carry out the option),
that he would buy the building of appellee a little
later, but was hard up then; and that he and appel-
lant had had several conversations in which appellant
said he would buy the building, and that appellant
never mentioned that appellee had no provision in
the lease for its removal. Appellant did not contra-
dict this testimony.

There was no consideration moving to appellant for
the option at or before the time it was given. If there
had been a consideration appellant could not have re-
ceded from the offer during the thirty days named
therein. Because there was no consideration appel-
lant could withdraw the option at any time before it
was accepted by appellee. It was so held in Crandall
v. Willig, 166 Ill. 233, where the option recited a con-
sideration of one dollar, but the proof showed none
was paid, and the opinion says there was a seal; but
it was held that in equity it was without considera-
tion. But if the option was accepted within the thirty
days and before it was withdrawn, the acceptance, and
the offer by appellee to take the lease and pay the rent
specified in the option and for the term named therein,
furnished an adequate consideration, and appellant
would then be bound. It would then be too late for
appellant to recede from his offer. This was held in
Perkins v. Hadsell, 50 Ill. 216. It was said in Carter
v. Love, 206 Ill. 310, that if the option contract there
involved, which was under seal and recited a consid-

eration of one dollar, was unilateral and without consideration, as there asserted by the proposed grantor, yet "it would become mutual and capable of enforcement at the instance of either party, upon acceptance of its terms by Love within the time limited and before the option was withdrawn." Any question whether such a contract is regarded by the courts of this state as lacking in mutuality after its acceptance within the time named in the option and before the withdrawal of the option, must be regarded as settled by Guyer v. Warren, 175 Ill. 328, and Ullsperger v. Meyer, 217 Ill. 262, and the cases there discussed, where in such a case such contracts are fully sustained.

The main question is whether there was an acceptance by appellee within thirty days and before the option had been withdrawn, if an attempt to withdraw it was ever made. Under the date of August 11, 1905, appellee prepared a lease from appellant to W. H. Wheeler and appellee, describing the premises more fully, and reciting that the lessees had erected a building thereon, and leasing the premises to the lessees from April 1, 1906, to April 1, 1911, with an option to the lessees to extend the terms of the lease for five additional years. It provided for paying as rent $50 on the first day of May, 1906, and a like sum on the first day of each succeeding month during the term. It contained covenants by the lessees to surrender the premises at the end of the term in as good condition as they then were, usual wear, inevitable accident and loss by fire excepted, and that upon nonpayment of rent when due the lessor might distrain or terminate the lease and recover possession without notice. It also provided that at the termination of the tenancy the lessees should have the right to remove the building and all improvements placed on the premises during the tenancy. It made the contract bind the heirs, executors and administrators of the parties. Wheeler and appellee signed and sealed

this lease and sent it to appellant. The next day, August 12th, under the letterhead of his attorney, appellant wrote a letter to Wheeler and appellee, the body of which was as follows:

"GENTLEMEN:—I received the lease from you, but could not accept the lease granting you an option of five years after April, 1911; therefore I have erased that part of the lease before signing the same. I do not rent any of my property with option for extensions. I am sixty-two years old, and do not desire to tie my property up for longer than five years. After the five years are up and I am living, and you desire this lease to the property, and we can agree on terms, we can make a new lease. If you do not desire to accept the lease as changed, return the same to me. The rent is to be paid monthly in advance, therefore I have made the first payment on April 1, 1906, instead of May 1, 1906. If these two changes are not satisfactory, return this lease to me, as there are other parties figuring upon this lot now and I must know at once whether you accept the lease as changed."

Appellant erased from the lease which had been sent him the words "with option to lessees to extend terms of this lease for period of five additional years." Where the lease provided for paying $50 on the first day of May, 1906, he changed the word "May" to "April," thus making the rent monthly in advance instead of on the first day of the succeeding month. He signed the lease so changed and inclosed it with the letter to appellee and Wheeler. The option had not given a full description of the lot, nor had it indicated that there should be provisions to protect the landlord in case of non-payment of rent, and it had not mentioned the right to remove the building which appellee had erected on the premises. By the preparation of the lease by appellee and its execution by appellant with these provisions in it, the parties had shown what it was their agreement and intention the details of the arrangement should be. The courts will

adopt such a construction of the contract as the parties by their conduct have placed upon it, when the same is reasonable. People v. Murphy, 119 Ill. 159; Shelby v. C. & E. I. R. R. Co., 143 Ill. 385, 397. The preparation and execution of this lease shows that the minds of the parties had met upon all the details not stated in the option, except that appellant desired the rent payable monthly in advance. Why appellee inserted the name of Wheeler as one of the lessees and why appellant assented thereto by signing the lease with Wheeler as a party, does not appear in this record. After appellee received back this instrument, so altered and signed by appellant, appellee prepared another lease also dated August 11, 1905, and word for word the same as the first lease, as he prepared that, except that it ran to appellee alone as lessee and that it adopted appellant's change making the rent payable monthly in advance. He again inserted the words "with option to lessee to extend terms of this lease for period of five additional years." He signed and sealed this lease and caused Wheeler to present it to appellant on August 22, 1905, which was within the thirty days. Appellant refused to sign it. There is no dispute as to the foregoing facts. Appellant testifying in his own behalf, was asked why he refused to execute the second lease, and he answered that one reason was that it gave appellee the privilege of moving the building off after ten years. He did not testify that he said that to Wheeler or that he stated that objection as a reason for refusing to sign, but he testified that he told Wheeler that ten years was too long, that he was getting too old, that he was sixty-one years old and that in ten years he would probably not be there. Wheeler testified that the only reason appellant gave for not signing the second lease, was that he was sixty-one or sixty-two years old and he would not sign a ten-year lease at that age. As he signed the first lease dated August 11th, with that

provision in it for the removal of the building at the termination of the lease, and did not base his refusal to Wheeler to sign the second lease upon the presence of that provision, the chancellor was warranted in concluding he did not refuse on that account.

Appellant contends that this option was imperfect and did not contain all the terms necessary to a lease. We think this position incorrect. If a lease had been drawn and executed by the parties in the exact words of the option, it would have been a perfect instrument. It would have leased appellant's lot on the corner of Cherry and Simmons streets in Galesburg, Illinois, to appellee for five years, with the privilege of ten years, and would have bound appellee to pay appellant $600 per year as rent therefor. But as appellee already had a lease of the lot from appellant, the term of which ran till April 1, 1906, and appellant could not grant a new term to begin earlier than the conclusion of the term already granted, it is obvious that the parties intended the lease embraced in the option to begin on April 1, 1906. If the provision fixing the rent at $600 per year is sufficient to authorize the conclusion that the parties mutually intended that the rent should be paid at the end of the year, then a lease in the words of the option would make the rent so payable at the end of each year; if not, the rent would be payable only at the end of the term. Taylor's Landlord & Tenant, sec. 361. But, as already suggested, by the preparation and execution of the first lease of August 11, the parties showed that they intended that additional details should be embodied in the lease to be entered into under the option, and the parties also thereby showed that every term of the option had been accepted, and they also thereby showed that every additional detail to enter into the lease had been agreed upon, except that appellee had offered to pay the rent monthly at the end of each month while appellant desired it paid monthly in advance.

The option gave Harrison the right during thirty days to have a lease of the lot at $600 per year for five years, with the privilege of ten years. By executing and sending to O'Connor the first lease of August 11, seventeen days after the option was given, Harrison accepted the offer to take the premises for five years, with the privilege of ten years, and to pay O'Connor $600 per year therefor. In other words, he accepted all the terms of the option, and so bound himself in writing under seal. In our judgment, after appellee had thus in writing accepted every term of the option, and agreed to take a lease of the premises for the term named and at the rental proposed, the option had been accepted and both appellant and appellee were bound, and if they afterwards disagreed upon other details, which one or the other party afterwards indicated a wish to have embodied in the lease, still appellee would be entitled to a lease in the language of the option, with such additional details inserted as they had thus afterwards agreed upon. Appellee by that lease added certain things which were beneficial to O'Connor rather than to himself. According to the option the rent was to be $600 per year for five years. That language made the entire rent payable at the end of the term, or else made the rent for each year payable at the end of that year. By the lease of August 11, as sent to O'Connor, Harrison made it payable at the end of each month. This was favorable to O'Connor, and more than the option required Harrison to do. Harrison also inserted the covenant above mentioned running to O'Connor, concerning the return of the premises in good condition at the end of the term, and authorizing O'Connor to distrain and terminate the lease without notice, for rent in arrear. These provisions were highly favorable to O'Connor, and were conditions to which the option did not entitle him. The lease also made Wheeler a tenant with Harrison, and bound Wheeler as well as Harrison to pay the rent. Apparently that

also was an advantage to O'Connor. Harrison inserted one provision favorable to himself which was not in the option. He provided for the right to remove, at the end of the term, the building and all improvements placed on the premises during the tenancy. But Harrison was already tenant of the lot till the following April, and the building already erected is shown by the proof to have been a trade fixture, and he could have removed it before April 1 following. Under the law improvements thereafter put on under the new lease would be removable at the end of that term, if they were trade fixtures. So that that provision was not so foreign to the option as would appear at first glance. If O'Connor had refused to sign the lease because of these provisions no doubt he would have been within his rights. But he objected to none of them. He signed the lease with them all included. He did make the monthly payments due at the beginning instead of the end of the month, which Harrison conceded to him, though not required by the option. Therefore during the thirty days every condition of the option had been accepted by Harrison in writing. O'Connor did not reject any addition Harrison had put into the lease which was not in the option, or refused to sign because thereof. What he attempted to repudiate was the provision for another five years, and he could not do that after Harrison had accepted every feature of the option and bound himself to perform them. If O'Connor might have receded because of the additions, he did not do so. He could not recede from the provision for another five year term, for he had tendered that in the option, and Harrison had accepted every provision of the option. By the second lease dated August 11, which appellee signed and presented to appellant, through Wheeler, on August 22, within the thirty days, appellee agreed to the requirement by appellant that the rent should be paid monthly in advance. He insisted on his right to have the lease extended for another five years at his elec-

tion. He had a right to that provision because the option contained it, and he had already accepted that option on August 11. This proof shows appellee accepted the offer made him in the written option within the thirty days, and that appellee should have executed that second lease. Appellant did not refuse to sign the second lease because Wheeler was not made a party thereto. He placed his refusal solely on the untenable ground that he could not be required to consent to an extension for five years. The second lease was in accordance with the option, and was as the parties had agreed.

It is true that a contract will not always be specifically enforced in a court of equity, but the circumstance that appellee erected a building upon these premises at an expense of $4,200, under the prior lease, which building was no doubt the main inducement to appellee to obtain and accept the option, and that he will probably lose the building unless the contract is specifically enforced as the parties have interpreted it, furnishes a sufficient equitable justification for giving appellee a decree. The decree, however, in specifying the terms of the lease which appellant was required to execute, omitted all reference to the building. As cross-errors are not assigned, we are not called upon to determine whether the court should have required the insertion in the lease the permission to remove the building. We conclude the decree does equity between the parties. It is therefore affirmed.

*Affirmed.*

Mr. Justice THOMPSON, having presided at the trial of this case in the lower court, took no part in its decision here.