## Cantrall Co-operative Coal Company v. John S. Level.

### Gen. No. 13,642.

1. LEASE—*of mine construed.* A lease upon mining property held to require the payment of royalties upon "screenings" upon the ground that the same was coal of a merchantable quality within the designation of the descriptive words "pea, nut, lump and egg coal" contained in the lease.

2. CONTRACT—*what proper to aid construction of ambiguous.* In order to aid in the interpretation of an ambiguous contract, it is proper for the court to consider the interpretation which the parties have by their conduct placed thereon.

Assumpsit. Appeal from the Superior Court of Cook County; the Hon. AXEL CHYTRAUS, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1907. Affirmed. Opinion filed March 6, 1908.

**Statement by the Court.** This is an action to recover royalties under a coal lease. At the close of all the evidence the court instructed the jury to find the issues for the plaintiff and assess his damages at the sum of $4,527.99. Judgment was entered accordingly.

Cantrall C. C. Co. v. Level.

Material facts are that appellee leased the right to mine coal underlying real estate in Sangamon county, Illinois, "for and in consideration of the payment of a royalty of three cents per ton, payable monthly for all pea, nut, lump and egg coal mined   *   *   *   of a merchantable quality and taken out through said shaft for and during the term of ninety-nine years."

The grantees under this lease subsequently conveyed their rights under it to appellant, and the latter entered into possession of the premises on or about August 8, 1891, and has since been continuously engaged in mining coal therefrom, upon which coal it paid royalties until March 1, 1905. After the last mentioned date it made a statement to appellee, dividing the coal mined into two classes, one entitled "lump, egg, nut and pea coal," and the other entitled "screenings." Prior to March 1, 1905, appellant admits it had paid the agreed royalty on all the coal mined, and it was not until November 20, 1906, that appellant in reply to a request from appellee for a statement mailed one purporting to show the amount of coal mined and removed from the said property, from March 1, 1905, to October 31, 1906, in which statement for the first time the classification between "lump, egg, nut and pea coal" and "screenings" was attempted to be made. That statement showed the number of tons of the first class mined during the time stated to be 140,872 tons and the number of the tons of screenings mined and removed from the premises to be 16,947 tons.

HUGH L. BURNHAM, for appellant.

LOUIS T. ORR, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

The contention of appellant is that the court erred in directing a verdict in favor of appellee on the ground that under the lease appellant was not obliged to pay for anything but "pea, nut, lump and egg coal" mined by them, and that "screenings" was not included under any of these designations. There is evidence tending to show that what is called screenings is merchantable coal and was sold by

appellant as it sold other coal. This is apparently not disputed. Such coal therefore comes within the description of coal "of a merchantable quality" contained in the lease. The testimony of appellant's secretary is to the effect that "screenings are different sizes, inch screenings and one and one-quarter inch," and that "coal that passes through one and one-quarter inch screens would be called screenings," that "pea coal passes through an inch and a quarter screen," and "is screenings when it is mixed with other coal"; that "screenings in the trade is pea coal and slack mixed," that "slack is the finest portion of the coal," that "you can call it different size screening," that "what passes through the inch screen some call slack, some call screenings." It thus appears from evidence introduced in behalf of appellant that what is called "screenings" includes different sizes of coal, some of it one and a quarter inch coal, and some of less size, that what is called pea coal passes through an inch and a quarter screen, and is itself literally screenings, and is called by that term when mixed with other coal. All coal that is passed through screens for the purpose of separating it into different sizes is in a sense screenings in that it passes through a screen. This is true apparently of all the coal described in the lease, unless it be lump coal of the larger sizes. It is, we think, a fair conclusion from all the evidence that whatever coal of a merchantable quality is, as the lease provides, "mined" by appellant is included in the general description of pea, nut, lump and egg coal. The lease makes no provision for screening. That is done apparently for appellant's convenience only.

If, however, there was any reasonable doubt of the correctness of the conclusion stated, it would be obviated in this case by the construction placed on the contract by the parties themselves. Prior to the statement submitted November 20, 1906, showing the coal mined and removed between March 1, 1905, and October 31, 1906, in which the distinction between other coal and what is called in that statement "screenings" was first made, appellant had paid for all coal taken out without distinction and without suggesting any distinction as to coal screened or unscreened. "It is a

familiar rule of construction that where the terms of an agreement are in any respect doubtful or uncertain and the parties to it have by their own conduct placed a construction upon it which is reasonable, such construction will be adopted by the courts in the event of litigation concerning it." People ex rel. v. Murphy, 119 Ill., 159–166.

It is urged in behalf of appellant that the trial court erred in sustaining objections to certain questions put to a witness in appellant's behalf as to the reasons why in statements made previous to March, 1905, no distinction had been made as to coal mined, between so-called "screenings" and other coal, and why the distinction was made in the subsequent statement. It is claimed that the purpose was to prove by the witness that the earlier statements made no such distinction by mistake. The testimony was correctly excluded. It may be the circumstances under which the statements in question were made might properly have been testified to as matters of fact, but appellant had no right to introduce testimony for the purpose of "proving a secret and unexpressed intention" or unexpressed purpose other than as indicated by the writings themselves. Brand v. Gallup, 111 Ill., 487–492. It is, we think, clear that appellant made these statements for some years and paid royalties on their showing in pursuance of its understanding and construction of the force and effect of the lease.

Finding no error in the record, the judgment of the Superior Court will be affirmed.

*Affirmed.*