(No. 37877.—

CATHERINE POCIUS, Appellant, *vs.* WILLIAM T. HALVORSEN, Appellee.

*Opinion filed Nov. 26, 1963.—Rehearing denied Jan. 20, 1964.*

McCarthy, Withry, Lyon & McCarthy, of Chicago, for appellant.

William T. Halvorsen, of Chicago, *pro se.*

Mr. Justice Hershey delivered the opinion of the court:

This is a suit begun by the plaintiff to recover $7,000 paid to the defendant as attorney's fees pursuant to an allegedly contingent fee contract. Since the plaintiff recovered nothing in a prior suit in which she was represented by the defendant, she contends that the fees paid by her as the suit progressed should be refunded. After a bench trial, the court decided all issues in favor of the defendant and

awarded him an additional fee of $4,021.65 pursuant to a counterclaim. The Appellate Court affirmed this decision and we allowed leave to appeal.

The record discloses that the plaintiff in the early part of January, 1955, went to the office of the defendant relative to her claim to certain real estate located at 6024 South Sacramento Avenue in Chicago and to certain cemetery lots, all of which were owned by one Emil Ber at the time of his death. At that time there was some discussion about the matter but no employment of the defendant resulted. On January 19, 1955, Mrs. Pocius returned to the defendant's office and they again discussed the case.

The defendant said that he would represent her if she would execute a written agreement which he presented to her. This provided for his employment "to perform such legal services as are necessary to my claim for the real estate and contents * * * in the building located at 6024 South Sacramento Avenue * * * against unknown heirs of Emil Ber, deceased, or other interested claimants. It is understood that upon the signing of the decree in the Superior Court of Cook County, or recording of a Master's Deed said legal services are completed and I hereby agree to pay a sum equal to one-third of the reasonable value of the property or money contained in said Decree less any sum already paid as attorney's fees on account. I further agree to pay actual court costs and other necessary expenses, including additional attorney's fees, if necessary, in prosecuting this claim." The defendant testified that this agreement was signed on January 19 by the plaintiff, and it forms the basis of his contention that he is entitled to retain the $7,000 already paid as well as to certain additional fees. The plaintiff testified that the signature on this contract was not hers and that she never agreed to the aforementioned contract. However, a hand-writing expert appointed by the court, upon stipulation of the parties, submitted a written report in which he stated that the name,

"Catherine Pocius," on the agreement of January 19, 1955, and on certain verified pleadings filed in the instant case were both written by the same person.

Two days after the execution of the January 19 agreement, the plaintiff paid to the defendant $500 and he delivered to her a receipt stating that said sum was a retainer. Thereafter, around the first of. May, 1955, the defendant appeared in two proceedings begun by the public administrator in the probate court relative to the sale and discovery of assets. These proceedings were continued on Mrs. Pocius's motion and apparently were not subsequently prosecuted. On May 25, 1955, the defendant filed suit in the superior court of Cook County on behalf of the plaintiff seeking title to the rooming house and to the cemetery lots, naming the public administrator and the unknown heirs of Emil Ber as defendants. In June of 1955, the plaintiff again paid the defendant $500, his receipt this time reciting "for legal services rendered." The defendant explained that he collected these payments on account of his fee as the suit progressed, even though none were then due under the contract, because he felt that he was almost certain of obtaining a favorable decree and knew that as a matter of practice the public administrator would not appeal.

In April of 1956, after the plaintiff's evidence had been introduced, the judge indicated that he intended to rule in Mrs. Pocius's favor but stated that a motion to reopen the case filed by certain living heirs of Emil Ber, who appeared in said proceeding in person, should be granted.

Subsequently in June of 1956, the defendant presented to the plaintiff another contract which provided as follows: "This will reaffirm the retaining and employment of William T. Halvorsen as my attorney to prosecute and/or settle the suit and claim * * * in case No. 55S7879 * * * and I reaffirm my agreement to pay him as compensation for his services a sum equal to one-third of the reasonable value of the property or money realized from said claim

either by settlement or judgment less any sum already paid for attorney's fees." This contract also provided that the plaintiff would pay the costs of the suit.

The defendant testified that he gave to the plaintiff the original and one carbon of this agreement but that she refused to execute same stating to him that she felt that she would lose the $1,000 which had already by this time been paid on account. The plaintiff on the other hand testified that she did execute the original of this contract and returned it to the defendant, and that this was the only contract that she had ever executed.

On February 19, 1957, a decree was entered in favor of the plaintiff, by the superior court, and on February 28, 1957, a master's deed was issued and recorded. The defendant on March 1, 1957, submitted a written statement to the plaintiff in which he asked for $10,000 in attorney's fee, based upon a $30,000 valuation of the property recovered, and for reimbursement of the then unpaid costs of around $30. Shortly thereafter, the plaintiff paid an additional $6,000 "on account," which brought her total payments to $7,000. The suit was then appealed to the Supreme Court of Illinois by the heirs of Emil Ber. During the pendency of the appeal Halvorsen talked to the attorney for the heirs who desired to settle the case and mentioned the figure of $3,000. Halvorsen recommended this settlement to the plaintiff, but she refused to pay anything stating that she had already won the case. In May of 1958, the Supreme Court reversed without remanding; the plaintiff took nothing by her suit.

In April of 1959, the heirs of Emil Ber filed a forcible entry and detainer action against Mrs. Pocius and again the defendant represented her and sought and obtained several continuances, apparently because it was felt that the plaintiff was considering purchasing the property from the heirs. Finally in September of 1959 pursuant to eviction notice, Mrs. Pocius left the rooming house and thereafter

brought this suit seeking a refund of the $7,000 paid pursuant to the agreement in question.

A contingent fee contract by definition is one that provides that a fee is to be paid to the attorney for his services only in case he wins, that is, a fee which is made to depend upon the success or failure to enforce a supposed right, and which fee is generally paid out of the recovery for the client. (*Adair* v. *First National Bank,* 139 S. C. 1, 137 S. E. 192.) Because the plaintiff did not recover anything in the suit concerning her claim to the real estate, she contends here that the defendant is, under the agreement which she contends is a contingent fee contract, entitled to only the actual court costs and other necessary expenses mentioned in the last paragraph of the contract, which admittedly amounted to only $371.65.

The defendant, on the other hand, contends that the agreement of January 19 was not a contingent fee contract, but one that called for a fee equal to one third of the value of the property upon the completion of the trial court work as evidenced by the signing of a decree or recording of a master's deed. Since he did obtain such decree and master's deed, he claims that he is entitled to not only the $7,000 already collected and the costs advanced, but also, as found by the trial court, to an additional $2,000 for the trial work, based upon the defendant's valuation of the property at the trial at $27,000, and also an additional $1,650 for the reasonable value of his services for handling both the appeal ($1,500), and the forcible entry and detainer suit ($150), or a total additional fee including costs advanced of $4,021.

It is true, as noted by the defendant, that the contract of January 19 expressly provides that the defendant's "legal services are completed," and his fee payable, upon the entry of a decree or the recording of a master's deed. However, we have held that, "While it is not the province of courts to interpolate new terms into contracts, against the evident intention of the parties, with the view of making such con-

tracts more reasonable, yet, on the other hand, even a strained construction of the language will be adopted for the purpose of preventing obvious injustice. The intention of the parties, it is true, must govern; but the experience of human affairs teaches courts that this intention is not to be sought merely in the apparent meaning of the language used, but this language may be enlarged or limited by reference to the circumstances surrounding the parties and the object they evidently had in view." (*Robinson* v. *Stow*, 39 Ill. 568, 572; and see, *United States Trust Co.* v. *Jones*, 414 Ill. 265.) The January 19 contract now being sued upon must, therefore, be construed in light of the circumstances surrounding its execution as well as the interpretation placed upon it by the parties.

The plaintiff went to the defendant's office in order to retain him, as is noted in the contract itself, "to perform such legal services as are necessary" to prosecute her claim of title to the property then in dispute. The defendant testified that for these services he was to receive a fee equal to "one-third of anything she realized from the suit." Since the handling of an appeal proved to be a necessary service to the prosecution of plaintiff's claim to a conclusion, it would appear that under this clause of the contract the defendant was obligated to handle the appeal and was entitled to a fee only if something was ultimately recovered for the plaintiff. That is, except for the possible effect of the aforementioned language regarding the entry of a decree or recording of a master's deed, it does appear that a true contingent fee contract was contemplated by the parties.

In explanation of his reasons for including the provision allowing him a fee dependent upon success at the trial level only, the defendant testified that he had thoroughly checked the law prior to taking the case and was almost certain that he "was going to get a decree" and wouldn't have taken the case unless he "could win it." He also claims that he knew that the public administrator, who would be representing

the contemplated defendants, "the unknown heirs of Emil Ber," did not in cases of this nature take appeals. In support of this assertion, the defendant points out that the public administrator did not in fact join in the appeal that was taken. Therefore, he argues that had the living heirs not intervened the case would have actually ended, as originally contemplated, upon the entry of the trial court's decree and recording of the master's deed.

The foregoing testimony does not, however, establish, as the defendant contends, that the plaintiff was to pay his fee regardless of the outcome of an appeal. Instead it shows simply that the defendant was certain both of winning at the trial level and that no appeal would be taken. For these reasons the contract was drafted to provide that the defendant's fee was due upon completion of the trial work, which was all the work that the parties believed would be required. An unexpected appeal being taken, this provision therefore became inoperative, and the earlier language providing that the defendant was to perform all necessary legal services for a fee dependent upon the plaintiff ultimately realizing something would seem to govern. The defendant's assertion, made for the first time on appeal, that the plaintiff represented to him at their initial conference that Emil Ber did not have any living heirs, and therefore that she should be required to pay his fee notwithstanding the loss of the property, not being supported by anything in the record, cannot of course be considered.

The conduct of the parties following the execution of the January 19 agreement demonstrates conclusively the accuracy of the above interpretation that the defendant was to be paid for his services only in the event of ultimate success.

As noted above it became known during the pendency of the litigation that Emil Ber did in fact have living heirs. After they were allowed to intervene in the case, the de-

fendant presented to the plaintiff the contract dated "June ——————, 1956," which provided for a fee of "one-third of the reasonable value of the property or money realized from said claim either by setlement or judgment." The defendant testified that this new contract was submitted in view of the intervention of the heirs and the trial court's order allowing a new hearing, and because he wanted to re-affirm his agreement with the plaintiff for her own protection. He further testified that "she didn't think it was necessary."

The defendant does not dispute the 1956 contract, as drafted, is a true contingent fee contract, that is, one providing for a fee only in the event the litigation is successfully concluded and something realized as a result thereof. He contends, however, that he is not bound by this contract since it was not signed by the plaintiff, which she denies, and further that her action in making partial payments on his fee as the suit progressed confirms that his fee was in no way contingent upon the ultimate disposition of the case. The defendant has however overlooked the actual effect of the defendant's testimony concerning the 1956 agreement as it relates to the interpretation of the January 19 agreement now being sued upon.

At no time did the defendant claim that the 1956 contract was an offer by him to enter into a new agreement or to modify the original agreement, which offer was rejected by the plaintiff. Instead he admits that it represented a reaffirmation of the actual basis of his employment. In view of this admission, the fact that this agreement may not have been signed by the plaintiff is immaterial. "It is a familiar rule of construction, that where the terms of an agreement are in any respect doubtful or uncertain and the parties to it have, by their own conduct, placed a construction upon it which is reasonable, such construction will be adopted by the courts, in the event of litigation concerning it." *People*

*ex rel. Attorney General* v. *Murphy,* 159 Ill. 165, 166; and *Wood River Drainage and Levee District* v. *Alton Box Board Co.* 26 Ill.2d 53.

While ordinarily the partial payment of a fee during the pendency of a suit, particularly where as here the receipt therefor recited "for legal services rendered," would seem to indicate a noncontingent fee arrangement, as defendant claims, that does not appear to be the case here. As we noted above, the defendant testified that he had checked into the law thoroughly prior to submitting the January 19 agreement and that he was sure of winning. It was because of this assurance to the plaintiff that these fees were collected and not because they were due under the contract itself.

It is clear from the foregoing evidence, that the 1956 contract was submitted by the defendant because the possibility of either a settlement out of court or an appeal from a decree in plaintiff's favor, matters that were not covered in the first agreement, were no longer considered remote in view of the presence of actual living parties on the opposite side. The new contract by the defendant's own testimony simply confirmed the fact that at all times he was representing the plaintiff on a strictly contingent fee basis, where he would be entitled to a fee only if the plaintiff recovered something at the conclusion of the litigation whether by settlement, trial, or trial and appeal. Since the rooming house in question was not realized by the plaintiff, the defendant is not entitled to any fee based upon one third of the value of that property.

Although the Appellate Court did not agree with this conclusion, it did state that: "This suit was brought for the return of $7,000.00 paid * * * *pursuant to a contingent* fee contract * * *" (40 Ill. App. 2d 162.) Despite this finding that court further concluded, however, that the parties, since they were dealing at arm's length, were free if they so desired to make the defendant's fee dependent

upon the entry of an erroneous trial court decree. The Appellate Court's finding that a contingent fee contract was intended by the parties, which contract is defined as one dependent upon success, obviously cannot be reconciled with its decision that the defendant is entitled to a fee equal to one third of the value of property that was lost on appeal, and this latter finding for the reasons already discussed is in our opinion erroneous.

Furthermore, it does not necessarily follow that, under all circumstances, a contract entered into prior to, and as a condition precedent to, the creation of an attorney-client relationship can, unless influenced by actual fraud or by mistake, be enforced as written. Contingent fee contracts do have the practical effect of giving an attorney a pecuniary interest in the successful prosecution of the litigation and, therefore, it is felt that unless absolutely fair they will adversely affect the usual attorney-client relationship. (Note, Lawyer's Tightrope—Use and Abuses of Fees, 41 Correll L.Q. 683.) For this reason, and because such contracts sometimes lead to solicitation and otherwise bring disrepute to the law, they are closely scrutinized by the courts. (*Gair v. Peck,* 6 N.Y.2d 97; 160 N.E.2d 43, *cert.* denied and app. dismissed, 361 U.S. 374.) And this is true without regard to whether or not they are entered into during the attorney-client relationship. (*Soper* v. *Bilder,* 87 N.J. Eq. 564, 100 A. 858.) "A contingent fee contract is always subject to the supervision of the courts as to its reasonableness." *Tonn* v. *Reuter,* 6 Wis. 2d 498, 95 N.W.2d 261.

This case is similar to the case of *People* v. *Murphy,* 119 Ill. 159, where an attorney agreed to represent his client in a foreclosure suit "for $150 if he wins or succeeds in obtaining a foreclosure of said mortgage, and is not to charge anything for his services unless he does succeed in the premises." The case was tried twice in the circuit court, and the decree in both instances was, on appeal of the defendants, reversed by this court. On remand after the sec-

ond reversal a decree was finally obtained. The defendant attorney in that suit, a disbarment proceeding, claimed, as does the defendant here, that he fully performed the agreement when he obtained the first decree, and that all subsequent services were extra and for which he should be allowed reasonable compensation. We there stated "By these terms, he bound himself not merely to obtain a decree, but to obtain a foreclosure, that is, a valid foreclosure, not one based upon an erroneous decree reversible on writ of error. That this was the understanding of both parties, and particularly that of the defendant is fully shown by his subsequent conduct. To say that he did not so understand the agreement would be to convict him of the grossest fraud." 119 Ill. at 165.

Similarly in the instant case, the defendant, after expressing the opinion that an appeal would be unlikely, entered into an agreement with the plaintiff calling for a fee to be paid upon winning in the trial court only. And, notwithstanding the fact that an unexpected appeal from the decree in plaintiff's favor was thereafter successfully taken, his position is that he can still enforce the original contract literally. We have no hesitancy in declaring that this position, in addition to being inconsistent with defendant's own testimony, with the testimony of the plaintiff, and with the express finding of the Appellate Court, all to the effect that a contingent fee contract was intended, is unfair to the plaintiff and is absolutely contrary to public policy. The contract, being subject under the above cited cases to the scrutiny of this court; even though it was entered into prior to the creation of an attorney-client relationship, is not, therefore, enforceable against the plaintiff. *People* v. *Murphy,* 119 Ill. 159; and see *In re Friedman,* 121 N.Y. Supp. 426, affirmed 199 N.Y. 537, where the court noted with reference to a contingent fee contract that an attorney is "an officer of the court and is judged as such and technical contractual rights must yield to his duty as such officer."

The defendant next contends that since the plaintiff during the pendency of the earlier suit collected various sums as rent while occupying the rooming house after the death of Emil Ber he is entitled to retain the fees paid him. The record is not clear as to the amount of the net rents received by the plaintiff, if any, but it is clear that the defendant did not recover these rents for the plaintiff, the same coming to her as a result of the occupancy of the property after the death of Emil Ber, which occupancy she was enjoying before she ever went to see the defendant in this case. Furthermore, it is conceded by the defendant that the plaintiff's ability to retain any net rents realized was due to a failure of the heirs of Emil Ber to press for an accounting, rather than to any effort on defendant's part.

The defendant also claims fees of $1500 for carrying on the appeal to the Supreme Court. He claims that the plaintiff promised to pay him for handling the appeal, a statement which the plaintiff denies. Certainly the defendant at no time claimed when he submitted the second contract that he was to receive an additional fee for services other than those provided in said contract, and at no time did he submit to the plaintiff a statement for same. By handling the appeal the defendant was obviously doing only what was necessary for him to do in order to earn and obtain the contingent fees set forth in the aforementioned contingent fee contract. Having been unsuccessful in the outcome of the case, no fees became due him.

The defendant's services in regard to the forcible entry and detainer suit were rendered following the opinion by this court against the plaintiff and could not, therefore, have been contemplated as a part of prosecuting the original claim seeking title to the property. The defendant is, therefore, entitled to the reasonable value of his services in that suit, fixed by his witness at $150. In addition he is admittedly entitled to recover the amount of the unpaid costs advanced by him, $371.65, and he is, under the written con-

tract, entitled to one third of the value of the cemetery lots still held by plaintiff pursuant to a portion of the original superior court decree which apparently was not appealed.

The judgments of the municipal court of Chicago and the Appellate Court are reversed and the cause is remanded to the municipal court for further proceedings not inconsistent with this opinion.

*Reversed and remanded.*