Dudley J. THEALL

v.

SAM CARLINE, INC. and Travelers Insurance Company.

Civ. A. No. 8476.

United States District Court
W. D. Louisiana,
Lafayette Division.

Feb. 29, 1963.

Simon & Trice, Phil Trice, Lafayette, La., for plaintiff.

Davidson, Meaux, Onebane & Donohoe, James E. Diaz, Lafayette, La., for defendants.

PUTNAM, District Judge.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Complainant, Dudley J. Theall, brings this suit on the law side of the Court under the provisions of Title 46 U.S.C.A. § 688 (Jones Act), and the general maritime law, for indemnity for injuries allegedly received by him while employed aboard a tugboat owned by the defendant, Sam Carline, Inc., on which he was employed as a cook. In addition to indemnity, complainant seeks maintenance and cure.

The case was tried to the Court without a jury, and we make the following findings of fact:

### I

On or about May 5, 1961, complainant was employed by Sam Carline, Inc., as deck hand and cook aboard the tug "Charles E".

### II

On said date Theall descended a four-rung ladder into the engine room of the tug from the port side. At the bottom of the ladder is a narrow catwalk approximately three feet in width. He turned and took one or two steps when he fell. In the fall, his right hand became entangled in the belt driving the generator attached to the starboard engine of the vessel.

### III

Photographs introduced in evidence as exhibits D–1 and D–2 show the port and starboard ladders leading into the engine room, with a portion of the port and starboard engines. D–2 shows the position of the generator and belt which caused plaintiff's injuries. It is completely exposed next to the passageway and catwalk descending from the starboard side, and immediately across from the catwalk used by plaintiff on the port side. There is no protective screen or guard in front of the generator flywheel and belt on the starboard engine, nor is there any such device on the generator and belt on the port engine.

## IV

The "Charles E" was underway at the time of the accident, it being stipulated that the vessel docked shortly thereafter.

## V

As a result of his hand becoming entangled in the generator belt, complainant suffered abrasive injuries to the third, fourth, and fifth fingers of his right hand. There was partial loss of skin and flesh, he was given first aid, and on the next day reported to Dr. Dauterive, a physician of New Iberia, Louisiana, who treated him thereafter.

## VI

The wound was of a minor nature and healed without any complications. Plaintiff was discharged by Dr. Dauterive as able to return to his usual occupation on June 12, 1961, a total period of 39 days including the date of injury and date of discharge.

## VII

There is no showing of any oil or other foreign substance on the catwalk in the engine room where plaintiff slipped. Plaintiff himself testified that he did not know what caused him to fall, other than that he lost his footing on the metal catwalk, which is of the usual corrugated type. There are no hand rails along the walks leading from the port or starboard ladders, nor is there any sort of hand or guard rail along the catwalk located amidships, between the two engines.

## VIII

There is a very slight stiffening of the little finger of plaintiff's right hand estimated by the attending physician at approximately one per cent loss of the use of this diget, which will, in the doctor's opinion, be a permanent residual of this accident.

## IX

Plaintiff has been employed aboard tugs, dredges and other small commercial vessels since he was eighteen years of age, and had been working for defendant Carline approximately five days before the injury of which he complains. The engine room was amply lighted at the time of the accident. There is no necessity for the Court to resolve the conflict in the evidence as to whether or not the electric lighting system was on at that time.

## X

The tug "Charles E" is a vessel within the meaning of the Jones Act, and plaintiff was employed aboard said vessel as a seaman. The accident occurred in navigable waters in the Bayou Cocodrie area within the jurisdiction of this Court.

Based on the foregoing findings of fact, we reach the following conclusions:

## XI

■ The location of the unguarded generators on both port and starboard engines, with their rapidly moving parts and belts, one on either side of a narrow passageway, coupled with the lack of a handrail along the catwalks, constituted a hazard, making the engine room an unsafe place in which to work and rendering the vessel unseaworthy. The Seeandbee, 102 F.2d 577 (6 Cir. 1939).

## XII

■ Moreover, the maintenance of this condition by the defendant Carline, without placing appropriate guard railings to prevent these rapidly moving belts from catching articles of clothing or even the limbs of workmen required to enter the engine room from time to time constitutes negligence and lack of ordinary care under the circumstances, which negligence resulted in plaintiff's injuries. Keefe v. Matson Nav. Co., 46 F.2d 123, (D.C.W.D.Washington 1930).

## XIII

■ Any negligence on the part of an employer under the Jones Act which plays any part, even the slightest, in producing an injury to an employee is sufficient to fix liability for such injuries. Ferguson v. Moore-McCormack Lines, 352 U.S. 521, 524, 77 S.Ct. 457, 459, 1 L.Ed.2d 511, 515 (1957); Rogers v. Missouri Pacific R. Co., 352 U.S. 500, 77 S.Ct. 443, 1 L.Ed.2d 493 (1957); Page v. St.

Louis Southwestern Railway Co., 5 Cir., Jan. 3, 1963, 312 F.2d 84, 298 A.L.R.2d 639.

## XIV

Defendants' witnesses testified that the engines by which the "Charles E" was powered do not come equipped with belt guards, and none of the Carline tugs are furnished with such protective devices. The mere fact that long practice permits a hazardous condition to exist does not exonerate from negligence. Casbon v. Stockard S. S. Corp., 173 F.Supp. 845 (E.D.La.1959).

## XV

Complainant in the present case was himself guilty of contributory negligence in bringing about the accident in question and his injuries flowing therefrom, in that he did not use ordinary care or keep a proper lookout for his own safety when entering the engine room, on the showing made here that he reached the bottom of the ladder, turned and took one or two steps when he fell. This is especially true where there was no oil upon the deck or catwalk, the weather was calm, and plaintiff simply fell while apparently proceeding along the catwalk in an ordinary manner.

## XVI

The accident and injuries in this case therefore resulted from the combined and concurring negligence of plaintiff's employer and that of plaintiff himself, and the Court finds plaintiff's contributory negligence contributed to his accident and injuries to the extent of twenty-five per cent.

## QUANTUM

Although his attending physician Dr. Dauterive, testified that plaintiff's fingers were cut and painful for a time, it is clear from the doctor's testimony that they were not as painful as plaintiff himself claims, nor is his disability as extensive and crippling as he would have us believe. The fingers healed rapidly and after thirty-nine days he was permitted by the doctor to return to his usual occupation on June 12, 1961. The record is bereft of any evidence concerning the wages plaintiff was earning at the time of his injury except his testimony, which was that he was making from ten to eleven dollars per day. Using these figures and basing our findings on a five-day week, between the period of Friday, May 5, to and including Monday, June 12, plaintiff lost a total of thirty working days, for a loss of wages of $330.00. In addition, he should receive an award for pain, suffering and any permanent disability resulting from this injury.

It is extremely difficult to arrive at any figure placing a value on pain, suffering and residuary disability. In the instant case, however, the residual disability referred to by Dr. Dauterive is of such an inconsequential nature, totalling only one per cent of the loss of use of the little finger of plaintiff's right hand, as to be almost negligible. There is no evidence that this cut or abrasion of plaintiff's hand was of extraordinary nature such as would cause extreme pain and suffering, and the Court feels that an award of $1000.00 would amply compensate for the damages suffered in this respect.

An award of $1330.00 is, therefore, proper. This amount must be reduced by 25% because of plaintiff's contributory negligence as hereinabove set forth. Plaintiff's recovery, then, is fixed at the sum of $997.50. Defendants are entitled to credit for payments made claimant during his illness of $154.00, admitted in brief, leaving a balance due him of $843.-50.

## MAINTENANCE AND CURE

We next consider plaintiff's claim for maintenance and cure. It is now settled that this claim arises from the nature of the seaman's employment and is contractual only "in the sense that it has its source in a relation which is contractual in origin, but, given the relation, no agreement is competent to abrogate the incident". Cortes v. Baltimore Insular Line, 287 U.S. 367, 371, 53 S.Ct. 173,

174, 77 L.Ed. 368 (1932); Vaughan v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962).

■ This right is not in the nature of compensation for injuries sustained by the seaman, nor is it intended to indemnify him for such injury. Founded upon sound policy for protection of seamen and the maintenance of the merchant marine for commercial and military service of the nation, it is an additional remedy, offered as an inducement to men to undertake what is by nature an arduous and hazardous employment, by way of affording them medical care and treatment and reimbursing them for the cost of maintenance during convalescence. Calmar Steamship Corp. v. Taylor, 303 U.S. 525, 58 S.Ct. 651, 82 L.Ed. 993 (1938); Vaughan v. Atkinson, supra, Norris, Law of Seamen, 2nd Ed., Vol. 1, Sec. 548.

■ Moreover, the seaman's recovery of maintenance and cure for injuries suffered while in the service of the vessel is a virtual certainty in the absence of wilful misbehavior on his part. It is not affected by his own negligence or that of the shipowner, and is not subject to reduction for contributory negligence as are his claims under the Jones Act and for unseaworthiness. Norris, Law of Seamen, Second Edition, § 549, Vol. 1, p. 601.

In Trahan v. Superior Oil Co., D.C., 204 F.Supp. 627 (1962) this Court, without elaboration, allowed maintenance and cure in addition to damages including loss of wages under libellant's claims predicated upon the Jones Act and unseaworthiness. There, as here, no consideration was given to the value of sustenance which the seaman received in calculating the indemnity due him under these remedies.

In Vaughan v. Atkinson, supra, it was held that income earned by a seaman as a taxi driver while an out patient from a tubercular hospital for a period of some two years during which maintenance was due because of this illness which he contracted while aboard ship, was not deductible from the allowance made for maintenance during the same period. The Court approved the rule of the Third Circuit in Yates v. Dann, 223 F.2d 64 (1955).

In Yates, the Court, speaking of the claim for maintenance, said:

"Appellee's contention that he is entitled to the full $18,206.00 claimed regardless of any duplication in the Jones Act recovery was properly decided against him by the district court. McCarthy v. American Eastern Corporation, 3 Cir., 1949, 175 F.2d 727, certiorari denied 1950, 338 U.S. 911, 70 S.Ct. 349, 94 L.Ed. 561. Pacific S. S. Co. v. Peterson, 1928, 278 U.S. 130, 49 S.Ct. 75, 73 L.Ed. 220, involving an election of remedies, is not to the contrary."

The case of McCarthy v. American Eastern Corp., 175 F.2d 727 (3 Cir. 1949), cited in the foregoing quotation, clearly sets forth the general rule to be as follows:

"For an injured seaman is entitled to the same maintenance as other seamen while at sea and the maintenance to which he is entitled after leaving the ship during the time needed for treatment and cure is under the maritime law the equivalent of that ordinarily furnished a seaman at sea. It follows, therefore, that when an injured seaman recovers full damages in an action for indemnity based upon unseaworthiness and negligence in which he has claimed loss of wages including the value of the board and lodging which form part thereof and medical expenses, if any, he has thereby recovered the maintenance and cure to which he is entitled up to the time of trial, at least."

Here, plaintiff Theall advances his claim for maintenance and cure in addition to his claim for damages for loss of wages and separately therefrom. The evidence discloses that his medical expenses have been paid by defendants except for a balance of $10.00, leaving only

the question of maintenance to be resolved.

We have not included this claim in determining damages above, nor did the Court do so in Trahan v. Superior Oil Co., supra. In view of the fact that the right to maintenance exists unaffected by contributory or comparative negligence, reason and equity impel us to the conclusion that, where possible, it should be separately assessed.

Plaintiff testified that both he and his wife managed to get by on his earnings of $11.00 per day. The Court is of the opinion that $5.00 a day would be the reasonable cost of board and lodging for his maintenance during the thirty-nine-day period of his convalescence. A total award for maintenance of $195.00, plus the $10.00 balance due for medical attention is made.

Formal decree will be entered accordingly.