McCRACKEN AND McCRACKEN, P.C., Plaintiff-Appellee, v. EUGENE HAEGELE, Defendant (Allen Schoeneman, Defendant-Appellant).

First District (4th Division)   No. 1—91—1994

Opinion filed June 10, 1993.

Kiesler & Berman, of Chicago (R. Howard Jump and David A. Wells, Jr., of counsel), for appellant.

James L. Fox, Peter J. Karabas, and James W. Fessler, all of Abramson & Fox, of Chicago, for appellee.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

The plaintiff, McCracken & McCracken, P.C. (McCracken), brought an action against the defendants, Allen Schoeneman and Eugene Haegele, to recover attorney fees pursuant to written contracts whereby McCracken represented the defendants in obtaining property tax reductions. Following a trial without a jury, the court entered a judgment in favor of McCracken and against Schoeneman in the amount of $17,244.75. When Haegele failed to appear for trial, the court entered judgment on the pleadings against him for $34,527.84 plus costs; Haegele has not appealed from the judgment against him. Schoeneman has appealed, contending that the trial court erred in refusing to set aside the contingent fee contract on the grounds of undue influence and in barring evidence concerning the reasonableness of the fee. Schoeneman also contends that the trial court's finding that he entered into the fee contract in his individual capacity rather than as president of a corporation was against the manifest weight of the evidence. Schoeneman further contends that the trial court erred in refusing to dismiss the action based on McCracken's alleged repudiation of its claim on the written fee contract.

On April 12, 1986, Schoeneman and five individuals known collectively as the Class 4 partnership, in conjunction with Haegele, purchased hotel property at 3010 North Mannheim Road in Franklin Park, Illinois. Legal title to the property was subsequently transferred in trust, with Haegele retaining a 50% beneficial interest, and Schoeneman retaining 50% on behalf of the Class 4 partnership. On December 26, 1986, Franklin House, Inc., was formed to manage the hotel property. Schoeneman was the president of the corporation.

On February 4, 1987, Haegele entered into a written contingent fee agreement with McCracken. McCracken instituted proceedings before the Cook County assessor to seek reduction in the assessed valuation of the property for the 1986 tax year. The fee agreement provided that Haegele would pay McCracken one-third of any tax savings. The assessor reduced the assessed valuation by $756,514, and McCracken billed Haegele for $32,076, which was one-third of the tax savings resulting from the reduction. Haegele did not pay McCracken's fee. This matter subsequently resulted in the judgment against Haegele.

On October 26, 1987, Schoeneman, acting for the Class 4 partnership, purchased Haegele's 50% interest in the property. Subsequently, David McCracken, president of McCracken & McCracken, P.C., called Haegele to discuss challenging the assessed valuation of the property for the 1987 tax year. Haegele informed McCracken that he had sold his interest in the property and suggested that McCracken call Schoeneman. McCracken did so, and on November 17, 1987, Schoeneman and McCracken entered into the contingent fee agreement which is at issue here. The agreement provided that McCracken would receive a fee of one-fourth of any tax savings realized from an assessment reduction for the 1987 tax year. The written fee agreement was sent to "Mr. Allen Schoeneman c/o Franklin House Hotel." Schoeneman signed the contract, "Allen Schoeneman pres."

Thereafter, McCracken filed a complaint with the assessor and secured a reduction in the assessed valuation of $567,236 resulting in a tax savings of $72,152. McCracken then sent a bill to Schoeneman for $17,950, which was not paid.

McCracken filed a complaint seeking damages of $32,076 plus costs against Haegele for the 1986 tax work and $17,950 plus costs against Schoeneman for the 1987 tax work. Counts I and II were directed against Haegele alleging breach of the February 4, 1987, contingent fee agreement and an account stated. Haegele answered, admitting the allegations of the complaint. Haegele then counterclaimed against Schoeneman for indemnification. When Haegele subsequently failed to appear for trial, the court entered a default judgment against him in the amount of $34,527.84 and dismissed his counterclaim. Haegele did not appeal.

Counts III, IV and V of the complaint were directed against Schoeneman, alleging breach of the November 17, 1987, contingent fee contract, account stated and unjust enrichment. The breach of contract count alleges that Schoeneman, as the beneficial owner of the property, was liable to pay the real estate taxes and entered into a contingent fee contract with McCracken to secure a reduction in the assessed valuation of the property for the 1987 tax year. The complaint further alleges that "[t]he fees charged by McCracken were fair, reasonable and commensurate with fees charged by other Chicago law firms for similar services." Schoeneman's answer essentially denied the allegations of the complaint and specifically alleged that "the fees charged were excessive, inappropriate, unreasonable, unconscionable, and bear no relationship to the work actually performed."

The answer did not allege a defense based on undue influence. However, prior to trial, Schoeneman filed a "Motion to Set Aside At-

torney Client Fee," alleging that McCracken's fees were excessive and that the contingent fee agreement was obtained through McCracken's use of undue influence. McCracken then made a motion *in limine* to bar any evidence regarding the reasonableness of the fee agreement, maintaining that it was negotiated and executed at arm's length and that the fees were unambiguously set forth and reasonable. Finding that the contingent fee contract was entered into "between two adults," the court denied Schoeneman's motion and granted the motion *in limine*.

During trial, Schoeneman was permitted to make an offer of proof as to the unreasonableness of McCracken's fee. David McCracken testified that he probably spent "a few hours," less than five, on the matter. Robert Behrens, an attorney employed by McCracken, testified that he spent between 10 and 20 hours on the project. Also, evidence was presented that Franklin House, Inc., retained attorney Patrick Quinn to obtain a reduction of the 1988 assessment. Quinn obtained a reduction of $309,002 and had charged a fee of $7,500. The court refused further evidence on this matter, but as an offer of proof, Schoeneman testified that Quinn had to appear before the tax appeals board.

At trial, Schoeneman testified that he signed the contingent fee agreement in his capacity as president of Franklin House, Inc. He stated that he did not pay McCracken's fee because he thought it was too high and because the hotel was in financial trouble. He testified that at one point, he and McCracken agreed to settle the 1986 and 1987 attorney fees for $15,000. However, when Schoeneman sent McCracken a check for $15,000, McCracken refused to accept it. On cross-examination, Schoeneman stated that Franklin House, Inc., never held an ownership interest in the property and that the partnership was obligated to pay the property taxes. After purchasing Haegele's interest, Schoeneman held 100% of the beneficial interest in the land trust as agent for and partner of the partnership. In a deposition, Schoeneman stated that he "never knew" or met with David McCracken and spoke with him "only by phone," having conversed with him a few times in the previous two years. Prior to the time he signed the fee agreement, tax matters for the property had been handled by Haegele, who was an accountant. Schoeneman admitted retaining McCracken to reduce the 1987 taxes on the property and stated that the reason McCracken's fee for the successful tax reduction was unpaid was because Franklin House, Inc., had "no money."

McCracken testified that Schoeneman never requested him to draft the contingent fee agreement in the name of Franklin House, Inc., and that it was only after the commencement of the litigation that he learned that Franklin House, Inc., existed. Apparently, McCracken's position was that he believed he was dealing with Schoeneman in his capacity as a partner in the partnership which owned the property.

At one point during his testimony, David McCracken stated that he was not suing on the written contract of February 4, 1987, but was suing on an oral contract made prior to that time, the evidence of which was the letter dated February 4, 1987. The portion of the complaint pertaining to the February 4, 1987, contract was directed against Haegele only. Schoeneman subsequently made a motion to dismiss McCracken's lawsuit on the grounds that contingent fee agreements must be in writing. The motion was denied.

■ Schoeneman first contends that the trial court erred in failing to recognize the presumption of undue influence based on the attorney-client relationship that existed with Schoeneman and his then partner, Haegele, prior to the execution of the November 17, 1987, contingent fee contract. McCracken was hired by Haegele in February of 1987 to obtain a reduction of the 1986 assessment. McCracken responds that no attorney-client relationship had been established with Schoeneman prior to the execution of the November 17, 1987, fee contract. The trial court found that no attorney-client relationship existed and accordingly did not apply the presumption of undue influence.

We do not believe that the record supports the trial court's finding that no prior attorney-client relationship existed.

The record shows that Haegele and Schoeneman were partners in the ownership of the property during the 1986 representation, until Haegele sold his interest. Although Schoeneman left the tax matters to be handled by Haegele, Schoeneman was at least aware that an attorney had been hired to challenge the 1986 taxes. There is no evidence that Schoeneman ever objected to the retention of McCracken or that he did not intend to be bound by the 1986 tax reduction. It therefore appears that Schoeneman, by his conduct, at least ratified Haegele's retention of McCracken and that, through Haegele, had an attorney-client relationship with him prior to the November fee agreement.

■ The question then becomes what effect this prior relationship has on the instant lawsuit. In *Franciscan Sisters Health Care Corp. v. Dean* (1983), 95 Ill. 2d 452, 448 N.E.2d 872, the supreme court rec-

ognized that a presumption of undue influence arises when an attorney enters into a transaction with a client during the existence of the fiduciary relationship. However, the strength of the presumption and the amount of proof required to overcome it are not determined by any fixed rule but rather depend upon the circumstances of each case. (*Franciscan Sisters*, 95 Ill. 2d at 463, 448 N.E.2d at 877.) In *Franciscan Sisters* and also in *Klaskin v. Klepak* (1989), 126 Ill. 2d 376, 386-87, 534 N.E.2d 971, the court stated that a strong presumption of undue influence arises when an attorney benefits from a transaction with a client. Where the presumption is particularly strong, it must be rebutted by clear and convincing evidence. *Klaskin*, 126 Ill. 2d 376, 534 N.E.2d 971.

*Franciscan Sisters* and *Klaskin* both involve situations in which a strong presumption of undue influence was found to exist. In *Franciscan Sisters*, an attorney who drafted a will for his client stood to receive a substantial legacy under the terms of the will. In *Klaskin*, an attorney who represented a client in the purchase of a condominium unit was subsequently named as a contingent beneficiary of the land trust in which the condominium was placed. In those cases the supreme court found that a strong presumption of undue influence arose because the attorney benefitted from the transaction with the client.

■ In the instant cause, McCracken did not benefit in any way other than to receive a fee, which occurs in all attorney-client transactions. In our view, the circumstances of the case at bar do not support a strong presumption of undue influence. The evidence presented at trial shows that Schoeneman had very little contact with McCracken prior to contracting with him in November 1987. Schoeneman testified that before that time tax matters for the property had been handled by Haegele, who was an accountant. Schoeneman "never knew" McCracken, having spoken with him only once or twice by telephone in Haegele's office. Furthermore, when McCracken contacted Schoeneman about the 1987 tax challenge, Schoeneman was actually able to negotiate a reduction in McCracken's customary fee. The contract called for McCracken to receive one-fourth of the tax savings rather than his customary one-third. At his deposition, Schoeneman stated that he did not dispute the amount of the fee but did not pay it because the project lacked money. Although the trial court did not consider the presumption of undue influence, we believe that the evidence at trial was sufficient to rebut the presumption as a matter of law.

■ Schoeneman next contends that even absent the presumption of undue influence, the court erred in granting McCracken's motion *in limine* to exclude evidence concerning the reasonableness of the fee. Schoeneman argues that the charging of an excessive fee was prohibited by disciplinary Rule 2—106 of the Code of Professional Responsibility (87 Ill. 2d R. 2—106) and therefore constituted a defense to McCracken's action to enforce the contingent fee contract. McCracken responds that evidence concerning the reasonableness of a fee is irrelevant where an attorney and a client enter into an express contract, and that Schoeneman may raise the excessiveness of a fee only in a disciplinary proceeding.

Rule 2—106 provides in pertinent part:

"(a) A lawyer shall not enter into an agreement for, charge, or collect an illegal or excessive fee.

(b) A fee is excessive when, after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee. Factors to be considered as guides in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood that the acceptance of the particular employment would preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent." 87 Ill. 2d R. 2—106.

In *Maksym v. Loesch* (7th Cir. 1991), 937 F.2d 1237, an attorney sued his client to recover on a contract for attorney fees. One of the defenses raised by the client was that the fee was excessive and violative of Rule 2—106. The seventh circuit, applying Illinois law, found that a contract for professional services can be rendered unenforceable by being found to be contrary to public policy. The court stated that although not every violation of the rules of professional ethics

will make a lawyer's contract with his client voidable *per se*, "conduct which violates both professional ethics and contract law, such as the charging of exorbitant fees by a lawyer, is not placed beyond the reach of contract law because it violates professional standards as well." (*Maksym*, 937 F.2d at 1244.) In *Pocius v. Halvorsen* (1963), 30 Ill. 2d 73, 83, 195 N.E.2d 137, the Illinois Supreme Court held that contingent fee contracts are always subject to the supervision of the courts, whether or not they are entered into during the attorney-client relationship, and will be enforced as written only if they are reasonable.

In the case at bar, Schoeneman raised the excessiveness of the contingent fee as a defense to McCracken's action on the contract. We believe that the court was required to consider evidence concerning the reasonableness of the fee and that it erred in granting McCracken's motion *in limine*. For this reason, we believe it is necessary to remand the cause solely for a determination on the reasonableness of the fee.

■ Schoeneman next contends that the trial court's finding that McCracken intended to deal with Schoeneman in his personal capacity rather than on behalf of Franklin House, Inc., was against the manifest weight of the evidence. The signature of a corporate officer may be sufficient to bind the corporation even if the officer fails to indicate his corporate affiliation if it was the intention of the parties to bind the corporation. (*People ex rel. City of Prospect Heights v. Village of Wheeling* (1986), 147 Ill. App. 3d 838, 840, 498 N.E.2d 601.) In determining whether it was the party's intention to bind the corporation principal or the purported agent individually, all the facts and circumstances surrounding the making of the contract are properly considered by the court. (*People ex rel. City of Prospect Heights*, 147 Ill. App. 3d 838, 498 N.E.2d 601.) The intention of the parties on this issue is a question of fact (*Wottowa Insurance Agency, Inc. v. Bock* (1984), 104 Ill. 2d 311, 316, 472 N.E.2d 411) and, as such, is best resolved by the trial court (*Commonwealth Edison Co. v. Department of Revenue* (1989), 179 Ill. App. 3d 968, 975, 535 N.E.2d 30). The trial court's factual findings will not be disturbed unless contrary to the manifest weight of the evidence. *Commonwealth Edison*, 179 Ill. App. 3d 968, 535 N.E.2d 30.

In the case at bar, the trial court found that Schoeneman intended to contract in an individual capacity, and these findings do not appear to be against the manifest weight of the evidence. McCracken testified that he had never heard of Franklin House, Inc., until the instant lawsuit. Neither the February 4, 1987, nor the February 17, 1987,

contract was drafted in the name of Franklin House, Inc. Moreover, by Schoeneman's own admission, Franklin House, Inc., had no ownership interest in the property or its contents and no legal obligation to pay taxes on it.

■■ Schoeneman's final contention is that the trial court should have granted his motion to dismiss after McCracken allegedly "repudiated" his cause of action while testifying at trial. Specifically, during his testimony, McCracken stated that he was not suing on the written contract of February 4, 1987, but was suing on an oral contract made prior to that time, the evidence of which was the letter dated February 4, 1987. Schoeneman then moved to dismiss the claim as to this contract, arguing that the contract was invalid as a matter of law because contingent fee agreements must be in writing. See 87 Ill. 2d R. 2—106(c)(2).

We do not believe that David McCracken's alleged repudiation of the February 4, 1987, contract had any effect at all on McCracken's claim against Schoeneman, which is based on a different contract. Therefore, the court acted properly in denying the motion to dismiss.

Accordingly, the judgment of the circuit court is affirmed in part and reversed and remanded in part for proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

JOHNSON and CAHILL, JJ., concur.