**James P. RUFOLO, for the Use of Ernest T. ROSSIELLO, assignee, Judgment–Creditor,**

v.

**MIDWEST MARINE CONTRACTOR, INC., a corporation, Judgment–Debtor,**

**and**

**Mutual Marine Office of the Midwest, Inc., insurance carrier, Citation Respondent.**

No. 89 C 7979.

United States District Court, N.D. Illinois, Eastern Division.

Nov. 27, 1995.

---

Ernest Thomas Rossiello, Rossiello & Associates, Chicago, IL, Thomas Edward Sarikas, Cascino Vaughan Law Offices, Ltd., Chicago, IL, for Judgment–Creditor.

Robert Norman Dunn, Clausen, Miller, Gorman, Caffrey & Witous, P.C., Chicago, IL, for Judgment–Debtor.

## MEMORANDUM OPINION AND ORDER

MAROVICH, District Judge.

On February 23, 1995, attorney Ernest T. Rossiello filed with this Court a "Motion for Order Compelling Insurance Carrier to Turn Over Partial Insurance Proceeds to Satisfy Assignee's Interest in Judgment and Motion to Enforce Attorney's Lien for Expenses of Litigation Advanced." In essence, Rossiello seeks attorneys' fees and costs owed to him by his former client, James P. Rufolo, as the result of Rossiello's successful representation of Rufolo, both at trial and on appeal, in an action predicated on the Jones Act and on general maritime law.

Central to this fee dispute are three contingent fee agreements between Rossiello and Rufolo. The first of these agreements—under which Rossiello is entitled to 33.3% of any sums obtained or recovered by suit or settlement—was signed at or near the creation of Rossiello's and Rufolo's attorney-client relationship. The second agreement—under which Rossiello is entitled to 40% of any sums recovered—and third agreement—under which Rossiello is entitled to 50% of any sums obtained—were both entered into after Rossiello's and Rufolo's attorney-client relationship had long been established. The second and third contingent fee agreements purportedly were necessary due to unforeseen difficulties in the resolution of Rufolo's case. Rufolo maintains that the first agreement is controlling; Rossiello asserts that the third agreement governs.

This Court referred Rossiello's motion to Magistrate Judge W. Thomas Rosemond, Jr. for resolution on March 10, 1995.

Now before this Court is Magistrate Judge Rosemond's 17–page Report & Recommendation (the "Report"), dated September 26, 1995 which recommends that "the original contingency fee agreement is the controlling fee contract. Thus, Rossiello is entitled to one third of the sums recovered from the suit or $63,139.83 plus interest. This amount includes one third of the cure and maintenance awarded to Rufolo, as this award was procured by Rossiello's efforts."

After conducting a de novo review of the record, 28 U.S.C. § 636(b)(1), engaging in an extensive analysis of the Report, examining the relevant authorities, and considering the parties' various objections to the Report, this Court finds Magistrate Judge Rosemond's reasoning to be fundamentally sound and his decision to be legally and factually proper. Accordingly, the Court adopts and incorporates Magistrate Judge Rosemond's Report pursuant to 28 U.S.C. § 636(b)(1) with the following modification.

The controlling contingency fee agreement, dated October 16, 1989, specifically provides:

I [Rufolo] authorize the said attorney to incur necessary and reasonable expenses in connection with the settlement, adjustment or prosecution of said claim and agree to compensate him in the amount of the actual expenses so incurred, regardless of the outcome thereof.

While the Magistrate Judge apparently recognizes that Rufolo is contractually obligated to compensate Rossiello for those expenses reasonably incurred in connection with Rufolo's case, the Magistrate Judge failed to include those expenses as part of the recommended fee award. Thus, this Court concludes that, in addition to the $63,139.83 representing one third of the sums recovered in Rufolo's suit, Rossiello is entitled to recoup his reasonable expenses from Rufolo. The Court refers any dispute as to the "reasonableness" of the $16,471.29 in expenses claimed by Rossiello to Magistrate Judge Rosemond for resolution.

## REPORT AND RECOMMENDATION

ROSEMOND, United States Magistrate Judge:

Before the Court is the *"Motion For Order Compelling Insurance Carrier To Turn Over Partial Insurance Proceeds To Satisfy Assignee's Interest In Judgment And Motion To Enforce Attorney's Lien For Expenses Of Litigation Advanced." **The motion, which is in essence for attorneys' fees and costs, is granted in part and denied in part.***

## BACKGROUND.

The underlying action was predicated on the Jones Act and on unseaworthiness claims under general maritime law. The plaintiff, James Rufolo, a shipping pilot, slipped and fell and injured his back on the oil-slicked stairway of a barge named the *M/V Shoreline II*. Rufolo sued Midwest Marine Contractor, Inc., the barge's charterer, and Service Welding & Shipbuilding, Inc., a firm whose arguably negligent repair work on the

vessel may have caused the oil to collect on the stairs.[1]

Midwest Marine brought a cross-claim against Service Welding for indemnification and contribution. The claim was denied by the District Judge.

A jury found that the *M/V Shoreline II* was unseaworthy and that Midwest Marine was negligent. It awarded Rufolo $375,000 in damages, which was reduced to $251,000 because Rufolo was found to have been 33 percent negligent.[2]

Before trial, Rufolo and Service Welding agreed to settle for $1,000.00. Pursuant to the trial court's rulings, this settlement excused the ship repair outfit from liability.

After trial, an appeal was taken by Midwest Marine seeking a path to indemnification from Service Welding by challenging, among other things, the *"bona fideness"* of the $1,000.00 settlement. The appeals court found *"no evidence of bad faith in th[at] settlement."*[3] The case was affirmed by the United States Court of Appeals for the Seventh Circuit.[4]

Subsequently, the United States Supreme Court granted Midwest Marine's petition for writ of certiorari. Upon review, the Supreme Court vacated the judgment, and remanded the case to the United States Court of Appeals for the Seventh Circuit for further consideration in light of certain pertinent and recently issued Supreme Court decisions.

The majority opinion of the United States Court of Appeals for the Seventh Circuit had applied the settlement bar contribution system to the *Rufolo* appeal, whereas recent enunciations of maritime law by the United States Supreme Court had all adopted the "proportionate share" rule which obviated the need for contribution actions. Accordingly, in light of the Supreme Court's recent articulations of maritime law, the United States Court of Appeals for the Seventh Circuit remanded the case to the District Judge

1. *Rufolo v. Midwest Marine Contractor, Inc.,* 6 F.3d 448, 449 (7th Cir.1993).

2. *Rufolo,* 6 F.3d, at 449.

3. *Rufolo,* 6 F.3d, at 453 (emphasis added).

4. *Rufolo v. Midwest Marine Contractor, Inc.,* 6 F.3d 448 (7th Cir.1993).

to apply the proportionate share rule as recently adopted by the Supreme Court.[5]

The District Court reheard the case on December 2, 1994. On January 10, 1995, judgment was finally entered in favor of plaintiff James P. Rufolo in the following amounts:

Judgment on liability ...... $127,500.00 + costs
Costs taxed ............... $3138.40
Maintenance and cure ..... $26,455 (insurer deduction of $5,000 subtracted)
Pre-judgment interest...... $32,326.11.
**TOTAL** ................. **$189,419.51**

Mutual Marine, as insurer, deposited funds in the court's registry in the amount of $162,-964.51, including costs and pre-judgment interest.

Central to this fee dispute are three contingent fee agreements between attorney, Ernest T. Rossiello, and his former client, plaintiff James P. Rufolo. The original contingency fee agreement was signed on October 16, 1989. This agreement outlines that Rossiello would be paid 33.3% of any sums obtained or recovered by suit or settlement. Specifically, the agreement states:

### CONTINGENT FEE AGREEMENT.

I hereby employ and appoint ERNEST T. ROSSIELLO as my attorney *to represent me in the settlement, adjustment or prosecution of my claim against Midwest Marine Contractor, Inc. and parties responsible arising out of negligence and unseaworthiness under the Jones Act* which occurred on or about the 2nd day of June, 1989, at or near Evanston, Illinois, and *I hereby agree to pay the said attorney as compensation for his services, and hereby assign to him, 33⅓% of any sums obtained or recovered therefrom by suit, settlement or otherwise.* Fee calculated on full settlement or judgment, before deductions for expenses of suit and any other liens. This agreement is inde-

pendent of any other attorney's lien, which is to be paid in addition hereto.

I hereby authorize the said attorney to incur necessary and reasonable expenses in connection with the settlement, adjustment or prosecution of said claim and agree to compensate him in the amount of the actual expenses so incurred, regardless of the outcome thereof.

Signed at Chicago, IL., October 16, 1989.

/s/ James Ruffolo

Witness: _____

I [Ernest T. Rossiello] hereby agree to prosecute the above matter entrusted to me and to charge no fee unless recovery is had and to make no settlement without the written consent of my client.[6]

After the entry of judgment but before an appeal was processed, a second *"Contingent Fee Agreement"* was drawn. It was dated September 2, 1992, and essentially provided that attorney Rossiello was to act as Rufolo's attorney to represent him "in the settlement, adjustment or prosecution of [his] claim against Midwest Marine Contractor *arising out of an appeal from judgment* which occurred on or about the 13th day of December, 1991."[7] The Agreement further provided that the attorney Rossiello was to be paid "as compensation for his services ... 40% of any sums obtained or recovered therefrom by suit, settlement or otherwise, plus one percent finance charge [on expenses advanced]."[8] Although contrary to its plain language, Rossiello argues that this agreement superseded the original fee agreement.

After an appeal and remand, yet another *"Contingent Fee Agreement"* was drawn. This one was dated July 21, 1994, and essentially provided that attorney Rossiello was authorized to act as Rufolo's attorney *to represent him "in the retrial or rehearing of [his] claim under the Jones Act* which was

---

**5.** *Rufolo v. Midwest Marine Contractor Incorporated,* 30 F.3d 136 (7th Cir.1994).

**6.** Plaintiff's Exhibit J, *attached to, "Motion For Order Compelling Insurance Carrier To Turn Over Partial Insurance Proceeds To Satisfy Assignee's Interest In Judgment And Motion To Enforce Attorney's Lien For Expenses Of Litigation Advanced"* (emphasis added).

**7.** Plaintiff's Exhibit I, *attached to, "Motion For Order Compelling Insurance Carrier To Turn Over Partial Insurance Proceeds To Satisfy Assignee's Interest In Judgment And Motion To Enforce Attorney's Lien For Expenses Of Litigation Advanced"* (emphasis added).

**8.** Plaintiff's Exhibit I.

remanded from the Supreme Court of the United States against Midwest Marine Contractor, Inc. and Service Welding and Shipbuilding Co. on or about April 26, 1994."[9] The Agreement further provided that attorney Rossiello was to be paid "as compensation for his services ... 50% of any sums obtained therefrom by suit, settlement or otherwise ... [to be] calculated on the full settlement or judgment, before deductions for expenses of suit or any liens."[10] Although contrary to its controlling language, Rossiello argues that the third fee agreement supersedes the original and the second fee agreement, *to-wit:* he argues that *"[t]he operable assignment of rights is the last ... [fee agreement] dated July 21, 1995, for 50% of all sums recovered by suit, settlement or otherwise."*[11] Consequently, Rossiello does not seek to be compensated at the rate of one-third of the judgment obtained for services rendered from the filing of the action to judgment; 40% of the remainder of the judgment obtained for services rendered for the appeal process; and 50% of whatever remains of the judgment obtained for the retrial of the cause. Rather, he seeks as his fee 50% of the entire judgment obtained, which would be more reasonable, if permitted.

Since judgment was entered on January 10, 1995, Rufolo has refused to execute a satisfaction of judgment. On January 26, 1995, Rufolo terminated the services of Rossiello. Rossiello asserts that he has the right to compensation per the contingent fee agreements *and contends that the operable agreement is the last agreement,* which

designates Rossiello's compensation at 50% of all sums recovered by the suit.

## STANDARD.

▇▇▇ A contract between attorney and client is scrutinized with care and jealousy by the courts.[12] And, due to the fiduciary nature of the relationship between attorney and client, transactions out of this relationship are subject to close scrutiny.[13] *Contingency fee agreements are enforced only if they are reasonable.*[14] The Supreme Court of Illinois has held that a presumption of undue influence arises when an attorney enters into a transaction with a client during the existence of the fiduciary relationship:

> [W]e note that different rules apply to fee contracts entered into before the attorney-client relation has begun and those entered into after it has begun. When an attorney enters into a transaction with a client, after the attorney has been retained, it is presumed that the attorney exercised undue influence.[15]

Additionally, in the context of fee contracts: "The courts of Illinois have given particular attention to contracts made or changed *after* the relationship of attorney and client has been established; it is generally held that *such* contracts are presumptively fraudulent."[16] To overcome this presumption, the attorney bears the burden of showing the utmost in good faith, that complete disclosure has been made, that the client has a full understanding of the facts and possible legal consequences, and that the agreement

---

**9.** Plaintiff's Exhibit H, *attached to,* "*Motion For Order Compelling Insurance Carrier To Turn Over Partial Insurance Proceeds To Satisfy Assignee's Interest In Judgment And Motion To Enforce Attorney's Lien For Expenses Of Litigation Advanced*" (emphasis added).

**10.** Plaintiff's Exhibit H.

**11.** *"Motion For Order Compelling Insurance Carrier To Turn Over Partial Insurance Proceeds To Satisfy Assignee's Interest In Judgment And Motion To Enforce Attorney's Lien For Expenses Of Litigation Advanced,"* at 4 (emphasis added).

**12.** *Bounougias v. Peters,* 49 Ill.App.2d 138, 150, 198 N.E.2d 142, 148 (1st Dist.1964), *citing, Pocius v. Halvorsen,* 30 Ill.2d 73, 83, 195 N.E.2d 137.

**13.** *Corti v. Fleisher,* 93 Ill.App.3d 517, 49 Ill.Dec. 74, 78, 417 N.E.2d 764, 768 (1981).

**14.** *McCracken & McCracken,* 188 Ill.Dec., at 12, 618 N.E.2d, at 582.

**15.** *American Home Assurance Company v. Golomb,* 239 Ill.App.3d 37, 41, 179 Ill.Dec. 961, 964, 606 N.E.2d 793, 796 (4th Dist.1992); *McCracken & McCracken, P.C. v. Haegele,* 248 Ill.App.3d 553, 559, 188 Ill.Dec. 7, 11, 618 N.E.2d 577, 581 (1st Dist.1993).

**16.** *Maksym v. Loesch,* 937 F.2d 1237, 1242 (7th Cir.1991) (*citing Corti v. Fleisher,* 49 Ill.Dec. at 78, 417 N.E.2d at 768) (emphasis in original).

reached was fair.[17] Indeed, *the " 'burden is always on an attorney to show in the first instance that any agreement he has made with his client is fair, just and reasonable.' "*[18] It is also incumbent upon an attorney to demonstrate consideration to support any second fee agreement reached.[19]

Furthermore, the Illinois Rules of Professional Conduct set forth guidelines for contingency fee agreements: "A contingency fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingency fee is calculated." [20]

### ANALYSIS.

■ Rossiello argues that the first contingency fee agreement is null and void because it was superseded by a second contingency fee agreement, and that the second contingency fee agreement, in turn, is null and void because it, too, was superseded by yet another contingency fee agreement. The second and the third contingency fee agreements were created and executed *after* the attorney-client relationship had begun, and concern the same lawsuit. The second and the third contingency fee agreements were supposedly necessary due to unforeseen difficulties in the resolution of the client's case. They were made notwithstanding that there was no reservation in the original fee agreement of the right to charge increased fees in case of unforeseen difficulties.

At issue is whether Rossiello has met his burden of demonstrating the reasonableness and fairness of the second and third contingency fee agreements. Rossiello has not carried his burden in this regard.

The original contingency fee agreement recites the following pertinent language:

I hereby employ ... Rossiello as my attorney to *represent me in the settlement, adjustment, or prosecution of my claim against Midwest Marine* ... arising out of negligence and unseaworthiness under the Jones Act * * * I ... agree to pay said attorney ... 33⅓ percent of any sums obtained or recovered therefrom by suit, settlement or otherwise.[21]

Prosecution of a claim means from beginning to end, and would encompass judgment, appeal, retrial, etc. until conclusion of the lawsuit. Had Rossiello only meant for his services to be confined to trial and judgment, he should have drafted an agreement which *specifically so limited his services or specifically excluded* appeal services and any additional or supplementary services thereafter. By not specifically excluding such services, they are perforce included in the language "prosecution of my claim." An ordinary citizen would give such meaning to the language until told otherwise. And no one contends that Rufolo was so informed at the time of the execution of the original contingency fee agreement. It is patently unfair to the client who because of unambiguous contract language has certain expectations to have the rules suddenly changed before prosecution of his claims is ended.

What Rossiello seeks to do through his subsequent fee agreements is to *guarantee* himself a profitable return for his time and effort. In other words, he seeks to rid himself of the monetary risks associated with contingency fee agreements. But, he may only do so here, if he has been specific and unambiguous about it.

One of the primary reasons that contingency fee agreements are judicially approved is due to the substantial risk of the litigation. An attorney's return in a contingency fee case has nothing to do with the amount of

17. *Corti*, 49 Ill.Dec. at 78, 417 N.E.2d at 768; *Bounougias v. Peters*, 198 N.E.2d 142, 148–49 (Ill.App.1964).

18. *Bounougias*, 49 Ill.App.2d, at 155, 198 N.E.2d, at 150 (emphasis added).

19. *Bounougias*, 49 Ill.App.2d, at 152, 198 N.E.2d, at 149.

20. *Illinois Rules of Professional Conduct*, Rule 1.5(c).

21. Plaintiff's Exhibit J (emphasis added).

time and energy that an attorney expends on the case. Because of the risky nature of the litigation itself, an attorney is permitted to recover a fee that is substantially disproportionate to his time and effort expanded in the case. Rossiello asserts that he worked 1000 hours throughout his representation of Rufolo. This may be more hours than Rossiello envisioned devoting to this case, yet he cannot change the fee agreement to reflect what he feels he subsequently deserves for this representation. Inherent in contingency fee agreements is the risk of investing time and energy that exceeds the value of the case. Sometimes contingency fee cases are profitable and sometimes they are not. But that is the nature of the beast so to speak.

The complexity of the action from the filing of suit to judgment—*indeed to judgment and appeal*—should have been foreseen by Rossiello. The appeals court's application of the incorrect rule of law was an unfortunate and, perhaps, unforeseeable circumstance. But these types of complications are not unusual, and are what make contingency fee cases risky. In any event, we conclude that there was no consideration for the second or third contingency fee agreements because Rossiello was already obligated to perform those services under the terms and language of the original fee agreement.

The underlying action was not before us. However, it does appear to us that Rossiello may well have done an extraordinary and exemplary job in obtaining the recovery that he did for Rufolo. And it is indeed unfortunate that his return was not more profitable or at least commensurate with the hard work that he put into the case. But, again, this goes with the territory so to speak—the territory in which contingency fee agreements thrive.

Accordingly, the first contingency fee agreement is controlling. This contract is unambiguous as to the parties' intent. As noted earlier, the express language of the contract does not indicate that the agreement is limited to trial litigation alone, nor does it reserve the right to increase the fee in the event of appeal or retrial.[22] Rossiello also fails to provide any authority in support of his claim that the execution of subsequent contingency fee agreements are customary practice, when a case becomes unforeseeably complex to the attorney.

■ *Rossiello may receive a percentage of the maintenance and cure award.* "Maintenance and cure is designed to provide a seaman with food and lodging when he becomes sick or injured in the ship's service; and it extends during the period when he is incapacitated to do a seaman's work and continues until he reaches maximum medical recovery."[23] The claim arises from the nature of the seaman's employment.

■ The shipowner's ancient duty to provide maintenance and cure for the seaman who becomes ill or is injured while in the service of the ship derives from the unique hazards attending the work of seamen, and fosters the twofold object of encouraging marine commerce while assuring the well-being of seamen.[24] To further these objectives, the United States Supreme Court has held that this ancient maritime duty arises irrespective of the absence of shipowner negligence and regardless of whether the illness or injury is suffered in the course of the seaman's em-

**22.** Rufulo contends that the second contingent fee agreement's provision of a one percent finance charge on expenses advanced should be struck as against public policy. Generally, privately contracted prejudgment interest may be awarded in federal courts. *See Gorenstein Enterprises v. Quality–Care, USA, Inc.*, 874 F.2d 431, 436 (7th Cir.1989). Although the one per cent finance charge on expenses advanced requirement is set forth in a handwritten provision of the second contingent fee agreement, it was awarded by the trial court as part of the judgment and, therefore, has for all intent and purposes been removed from challenge. Interestingly, it was not a part of the original fee agreement nor the third contingency fee agreement. In this regard, Rossiello has received somewhat of a windfall in the trial court's award of the one percent finance charge. Had Rossiello's contentions advanced before us prevailed, the operative fee agreement would have been the third and final agreement which contains no finance charge provisions of any nature.

**23.** *Vaughan v. N.J. Atkinson*, 369 U.S. 527, 532, 82 S.Ct. 997, 1001, 8 L.Ed.2d 88 (1962).

**24.** *Vella v. Ford Motor Company*, 421 U.S. 1, 4 and 5, 95 S.Ct. 1381, 1383, 43 L.Ed.2d 682 (1975).

ployment.[25] And so broad is the shipowner's obligation in this regard that negligence or acts short of culpable misconduct on the seaman's part will not relieve the shipowner of the responsibility.[26] Accordingly, the breadth and inclusiveness of the shipowner's duty assure its easy and ready administration—for it has few exceptions or conditions to stir contentions, cause delays, or invite litigation.[27] Thus, a seaman's recovery of maintenance and cure for injuries suffered while in the service of the vessel is a *virtual certainty* in the absence of wilful misbehavior on his part.[28]

■ Maintenance and cure is unequivocally due a seaman and, therefore, is his upon the asking. An attorney should not have to expend any effort or expense to obtain a seaman's maintenance and cure. Any expense incurred by a seaman's attorney in obtaining the maintenance and cure award should be borne by the opposing party for the simple reason that, unless resistance is predicated on a defense of wilful misbehavior on the part of the seaman or a defense of a similar nature, resistance is without merit. Accordingly, if the seaman's attorney meets any resistance to a maintenance and cure request, the party resisting should be made to pay the seaman's attorneys fees. A seaman's maintenance and cure award should not be diminished in any way whatsoever.

■ Here, no party appeared in open-court at the default hearing to resist Rufolo's attorney's maintenance and cure request.[29] However, even forcing the seaman's attorney to appear in open-court to obtain the maintenance and cure award was unfair, and the attorneys' fees and costs incurred by the seaman's attorney in so doing could have been assessed against the opposing party, as a sanction for meritless resistance had a request for such sanctions been made.

Alternatively, maintenance and cure attorneys' fees could have been awarded as part of Rufolo's overall damages:

> In the instant case respondents were callous in their attitude, making no investigation of libellant's claim and by their silence neither admitting nor denying it. As a result of that recalcitrance, libellant was forced to hire a lawyer and go to court *to get what was plainly owed him under laws that are centuries old.* The default was willful and persistent. It is difficult to imagine a clearer case of damages suffered for failure to pay maintenance than this one.[30]

Thus, Rossiello could have requested that the District Judge assess Midwest Marine the additional sum of one-third of the maintenance and cure award as part of Rufolo's overall damages. Had he requested the trial court to assess his one-third contingent fee entitlement against Midwest Marine as a sanction or as part of Rufolo's damages, Rossiello would have received the windfall that the law permits—a windfall, because ordinarily minimal work need be expended by an attorney in order to obtain a seaman's maintenance and cure. In any event, fairness dictates that Rossiello be compensated for his efforts. And, the plain language of the original fee agreement does recite Rufolo's agreement to pay Rossiello "as compensation" for his services ... 33⅓% of *any sums obtained.*[31] Accordingly, we permit Rossiello to recover, as part of his fee, one third of Rufolo's maintenance and cure award.

***Recommendation:*** The District Judge should hold that the original contingency fee

25. *Vella,* 421 U.S., at 5, 95 S.Ct., at 1383.

26. *Vella,* 421 U.S., at 5, 95 S.Ct., at 1383.

27. *Vella,* 421 U.S., at 5, 95 S.Ct., at 1383.

28. *Theall v. Sam Carline, Inc.,* 241 F.Supp. 748, 752 (W.D.La.1963).

29. *"Order And Judgment For Payment Of Maintenance And Cure"* (December 26, 1989), *attached*

as *Plaintiff's Exhibit G–1 to, "Memorandum Of Law Following Oral Argument In Support Of Plaintiff's Motion To Determine The Appropriate Attorney Fee."*

30. *Vaughan v. N.J. Atkinson,* 369 U.S. 527, 531 and 532, 82 S.Ct. 997, 1000 and 1001, 8 L.Ed.2d 88 (1962).

31. Plaintiff's Exhibit J (emphasis added).

agreement is the controlling fee contract. Thus, Rossiello is entitled to one third of the sums recovered from the suit or $63,139,-683.60 plus interest. This amount includes one third of the cure and maintenance awarded to Rufolo, as this award was procured by Rossiello's efforts.[32]

*So Recommended.*

---

**32.** Pursuant to Rule 72(b) of the Federal Rules of Civil Procedure, the parties must file their objections to the Report and Recommendation with The Honorable W. Thomas Rosemond, Jr. within 10 days after being served with a copy of the report. Failure to file objections within the specified time period waives the right to appeal the Magistrate Judge's report. *Video Views, Inc. v. Studio 21, Ltd.,* 797 F.2d 538 (7th Cir.1986). *See* also, *Provident Bank v. Manor Steel Corporation,* 882 F.2d 258, 261 (7th Cir.1989) (when a matter has been referred to a Magistrate Judge, acting as a special master or § 636(b)(2) jurist, a party waives his right to appeal if he has not preserved the issues for appeal by first presenting them to the District Judge as objections to the Magistrate Judge's report).